THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DAMIEN BRABOY, Defendant-Appellant.

First District (5th Division)    No. 1—07—0512

Opinion filed July 2, 2009.—Rehearing denied June 24, 2009.

Patricia Unsinn and Kristine A. Neal, both of State Appellate Defender's Office, of Chicago, for appellant.

Anita Alvarez, State's Attorney, of Chicago (James E. Fitzgerald, Peter Fischer, and Carol L. Gaines, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE FITZGERALD SMITH delivered the opinion of the court:

After a jury trial, defendant Damien Braboy was convicted of first degree murder under an accountability theory and three counts of home invasion. The court sentenced defendant to 40 years' imprisonment for the murder conviction and 30 years' imprisonment each for the home invasion counts, ordering the home invasion sentences to run concurrently with one another, but consecutive to the sentence for murder, for an aggregate 70-year term. Defendant does not contest the sufficiency of the evidence. Defendant appeals, contending: (1) he was denied the effective assistance of trial counsel where counsel failed to request separate verdict forms for the various theories of first degree murder under which defendant was charged; (2) the trial court erred when addressing the venire; and (3) the trial court erred where it entered three convictions for a single act of home invasion. For the following reasons, we affirm the judgment of the circuit court of Cook County, vacate two of the home invasion convictions, and correct the mittimus.

## BACKGROUND

Defendant was charged with multiple counts of murder, home invasion, and armed robbery arising from the May 12, 2002, death of

victim Leon Brewer. Defendant and two codefendants, Larry Williams and Hananiah Dukes, were charged by indictment with first degree murder based upon three theories: intentional or knowing, strong probability, and felony murder. They were also charged with the armed robbery of Francisco Camacho and multiple counts of home invasion pertaining to Camacho, Ulyses Brewer, and Robert Brewer. Williams' case was nol-prossed. Defendant and Dukes were tried in a simultaneous but separate jury trial.[1]

The following facts were adduced at trial. In 2002, Camacho lived in a bungalow at 6125 South Artesian Avenue. He rented rooms in the house to the victim, the victim's wife Dorita, and their sons Ulyses and Robert. Camacho also sold marijuana.

At approximately 9 p.m. on May 12, 2002, 9-year-old Ulyses and 10-year-old Robert were home without their parents when a man appeared from the basement wearing all black and with a cloth covering his face. He commanded the boys to get on the floor. The boys complied. The boys could hear screaming coming from Camacho's bedroom and voices demanding money.

Three masked men, all armed with guns, pushed Camacho to the floor. He felt a gun barrel on the back of his neck and one of the men demanded $10,000 and marijuana. Camacho recognized the voice as that of defendant, who was his girlfriend Joi's brother, and with whom he had spoken earlier that day. Generally, Camacho only sold drugs to his friends. But, to appease Joi, he had sold a quarter pound of marijuana to defendant for a good price on three occasions during the previous week. Defendant attempted to purchase more marijuana on the morning of the shooting, but Camacho refused to continue giving him a discount on the price. Defendant became angry and left.

According to Ulyses, one of the masked men told him to lock the front door. He did. The man spoke directly to Ulyses and briefly lifted the cloth covering his face, allowing Ulyses to see his face. Camacho told the men, who were searching his bedroom, that the drugs were in the attic. Camacho denied having money in the house. The men blindfolded Camacho, tied his hands with tape, and led him, Ulyses, and Robert upstairs to the attic. The men found the marijuana in the attic, but continued demanding money. Ulyses saw the men hitting Camacho with their guns and hands. A voice Camacho did not recognize suggested that they hold Camacho until the following day and make him get money from the bank. Camacho heard defendant say, "let's pop him right now."

---

[1]Williams and Dukes are not parties to this appeal.

When the victim and Dorita entered the house, they could see the house had been ransacked. The victim told Dorita to stay by the door, and he walked toward the boys' bedroom. Dorita heard people coming down from the attic and then saw the victim running toward her, chased by an armed, masked man. Dorita saw the man shoot the victim, and then he put the gun to her head. He fled when another man shouted from the back of the house. The victim died from the gunshot wound later that night.

Camacho jumped from the attic window and ran into the alley. From there, he observed three men emerge from the back of his house carrying his black bag containing marijuana.

The defense rested without presenting any evidence. At the jury instructions conference, defendant did not request the court give the jury separate verdict forms based on the different theories of murder. Following closing arguments, the court instructed the jury on first degree murder with the following instructions:

> "A person commits the offense of first degree murder when he kills an individual if, in performing the acts which cause the death,
> he intends to kill or do great bodily harm to that individual;
> or
> he knows that such acts will cause death to that individual;
> or
> he knew that such acts create a strong probability of death or great bodily harm to that individual;
> or
> he is committing the offense of home invasion."

See Illinois Pattern Jury Instructions, Criminal, No. 7.01 (4th ed. 2000).

And:

> "To sustain the charge of first degree murder, the State must prove the following propositions:
> *First*: That the defendant, or one for whose conduct he is legally responsible, performed the acts which caused the death of Leon Brewer; and
> *Second*: That when the defendant, or one for whose conduct he is legally responsible, did so, he intended to kill or do great bodily harm to Leon Brewer;
> or
> he knew that his acts would cause death to Leon Brewer;
> or
> he knew that his acts created a strong probability of death or great bodily harm to Leon Brewer;
> or
> he was committing the offense of home invasion.

If you find from your consideration of all the evidence that each one of these propositions has been proved beyond a reasonable doubt, you should find the defendant guilty.

If you find from your consideration of all the evidence that any one of these propositions has not been proved beyond a reasonable doubt, you should find the defendant not guilty." (Emphasis in original.)

See Illinois Pattern Jury Instructions, Criminal, No. 7.02 (4th ed. 2000).

The court provided the jury with general verdict forms for first degree murder. The jury found defendant guilty of first degree murder. It also found defendant guilty of one count of home invasion each for Camacho, Ulyses, and Robert. It made separate findings that two of the offenses of home invasion were committed against victims who were under 12 years of age.

Following a sentencing hearing, the court sentenced defendant to 40 years' imprisonment for first degree murder and 30 years' imprisonment for each of the home invasion counts. The home invasion sentences were to run concurrently with each other, but consecutive to the murder sentence, for an aggregate 70-year term.

Defendant filed a motion to reconsider sentence, which the court denied. Defendant now appeals.

## ANALYSIS

### Jury Instructions

Defendant first contends that he was denied the effective assistance of counsel where trial counsel did not request separate verdict forms for the various theories of first degree murder under which defendant was charged. Specifically, defendant argues that he was prejudiced because it was reasonably probable that the jury would have convicted him of felony murder had separate verdict forms been given, which would have precluded the trial court from sentencing him to consecutive terms for the underlying felony. We disagree.

To establish a claim of ineffective assistance of counsel, a defendant must show that: (1) his attorney's representation fell below an objective standard of reasonableness; and (2) he was prejudiced by this deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687-88, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2064 (1984); *People v. Palmer*, 162 Ill. 2d 465, 475 (1994). Failure to make the requisite showing of either deficient performance or sufficient prejudice defeats the claim. *Palmer*, 162 Ill. 2d at 475-76. To satisfy the first prong, a defendant must overcome the presumption that contested conduct which might be considered trial strategy is generally immune from

claims of ineffective assistance of counsel. *People v. Martinez*, 342 Ill. App. 3d 849, 859 (2003). The reviewing court must remember to give great deference to the performance of counsel. *Strickland*, 466 U.S. at 691, 80 L. Ed. 2d at 695, 104 S. Ct. at 2066. Such deference to counsel's conduct should be given within the context of trial and without the benefit of hindsight. *People v. King*, 316 Ill. App. 3d 901, 913 (2000), citing *Strickland*, 466 U.S. at 689, 80 L. Ed. 2d at 694, 104 S. Ct. at 2065. To establish prejudice, a defendant must show that there is a reasonable probability that, but for counsel's insufficient performance, the result of the proceeding would have been different. *People v. Easley*, 192 Ill. 2d 307, 317 (2000).

◼ In Illinois, the offense of first degree murder is statutorily defined:

"(a) A person who kills an individual without lawful justification commits first degree murder if, in performing the acts which cause the death:

(1) he either intends to kill or do great bodily harm to that individual or another, or knows that such acts will cause death to that individual or another; or

(2) he knows that such acts create a strong probability of death or great bodily harm to that individual or another; or

(3) he is attempting or committing a forcible felony other than second degree murder." 720 ILCS 5/9—1(a) (West 2006).

A defendant cannot be found guilty of both felony murder and the predicate felony. *People v. Morgan*, 197 Ill. 2d 404, 447 (2001). The purpose of jury instructions is to convey to the jury the correct principles of law applicable to the evidence submitted to it so that the jury may reach a correct conclusion according to the law and the evidence. *People v. Hopp*, 209 Ill. 2d 1, 8 (2004).

Our supreme court recently resolved an issue similar to the one at bar in *People v. Smith*, 233 Ill. 2d 1 (2009), in which the court considered the consolidated appeals of defendants Leratio Smith and Adam Titus. Smith was charged with first degree murder (intentional murder, knowing murder, and felony murder predicated on armed robbery and attempted armed robbery), armed robbery, and attempted armed robbery. See *Smith*, 233 Ill. 2d at 5. Defense counsel requested the court provide the jury with separate verdict forms, noting that a conviction for first degree murder based on the commission of a felony would have specific sentencing implications. See *Smith*, 233 Ill. 2d at 8-9. The court denied the request, and the jury returned a general verdict of guilty of first degree murder. See *Smith*, 233 Ill. 2d at 9. It also found the defendant guilty of armed robbery and attempted armed robbery. See *Smith*, 233 Ill. 2d at 9.

At Smith's sentencing, the court noted there was no doubt that the defendant intentionally killed the victim, and it imposed a sentence of 60 years' imprisonment for first degree murder, a concurrent term of 20 years' imprisonment for armed robbery, and a consecutive term of 8 years' imprisonment for attempted armed robbery. See *Smith*, 233 Ill. 2d at 9-10.

On appeal, this court noted that the defendant would not have been eligible for a consecutive sentence on the attempted armed robbery conviction if the jury had found him guilty of felony murder premised on attempted armed robbery, and not guilty of both intentional and knowing murder. See *Smith*, 233 Ill. 2d at 9-10. We held:

" '[W]hen a defendant who is charged with intentional or knowing murder and felony murder requests a separate verdict form for felony murder and such a request has a basis in the evidence presented at trial, the separate verdict form must be given or consecutive sentences cannot be imposed based on the offense underlying the felony murder, pursuant to section 5—8—4(a) of the Unified Code of Corrections (730 ILCS 5/5—8/4(a) (West 2004)).' " *Smith*, 233 Ill. 2d at 10, quoting *People v. Smith*, 372 Ill. App. 3d 762, 771-72 (2007).

The other defendant, Titus, was charged with intentional murder, knowing murder, and felony murder, and one count of armed robbery for the robbery and shooting death of a pizza delivery man. See *Smith*, 233 Ill. 2d at 10. Like Smith, Titus requested separate verdict forms for each of the counts of murder charged. See *Smith*, 233 Ill. 2d at 13. The trial court denied the request, and the jury returned general verdicts of guilty of first degree murder and armed robbery. See *Smith*, 233 Ill. 2d at 13. The trial court sentenced Titus to 38 years' imprisonment for first degree murder and a consecutive 18-year sentence for armed robbery. See *Smith*, 233 Ill. 2d at 13. On appeal, a different division of this court, following *Smith*, held that the trial court erred when it refused the defendant's request for separate verdict forms. See *Smith*, 233 Ill. 2d at 13. The court affirmed Titus' convictions but modified his consecutive sentence for armed robbery to run concurrently with his sentence for murder. See *Smith*, 233 Ill. 2d at 13.

Our supreme court, hearing these consolidated appeals, noted that "first degree murder is a single offense and, for that reason, it is constitutionally permissible to use a general verdict form, even when murder is charged in a multicount indictment based on different theories." *Smith*, 233 Ill. 2d at 14, citing *Schad v. Arizona*, 501 U.S. 624, 115 L. Ed. 2d 555, 111 S. Ct. 2491 (1991). The different theories embodied in the first degree murder statute are simply differing ways

to commit the same crime of first degree murder. *Smith*, 233 Ill. 2d at 16, quoting *People v. Cooper*, 194 Ill. 2d 419, 429 (2000). Accordingly, "because first degree murder is a single offense, it is constitutionally permissible for jurors to return a general verdict of guilty even if there is no juror unanimity with regard to *the means* by which the murder was committed." (Emphasis in original.) *Smith*, 233 Ill. 2d at 16, citing *Schad*, 501 U.S. at 631-32, 115 L. Ed. 2d at 565, 111 S. Ct. at 2497.

Nonetheless, there may be different sentencing consequences based on the specific type of murder proven. *Smith*, 233 Ill. 2d at 16-17. For example, a defendant cannot be convicted of both felony murder and the predicate felony, but there is no such limitation where the defendant is convicted of intentional or knowing murder. *Smith*, 233 Ill. 2d at 17, citing *People v. King*, 66 Ill. 2d 551, 566 (1977).

The State in the case at bar urges us to find that, although defendant's sentence would have been different had defendant been found guilty only of felony murder and not of knowing or intentional murder, we should nonetheless apply the "one good count rule" to uphold the trial court's determination that defendants were convicted of intentional murder. The "one good count rule" is a legal construct " '[w]here an indictment contains several counts arising out of a single transaction, and a general verdict is returned[,] the effect is that the defendant is guilty as charged in each count.' " *People v. Thompkins*, 121 Ill. 2d 401, 455 (1988), quoting *People v. Lymore*, 25 Ill. 2d 305, 308 (1962). However, a "general verdict would not be sufficient if the defendant was charged with an offense and the 'degree of the offense' was dependent on some factor not specifically found by the jury." *Smith*, 233 Ill. 2d at 20; *Armstrong v. People*, 37 Ill. 459, 464 (1865). Courts have held that, where a general murder verdict is delivered for a defendant who is charged with murder in multiple counts alleging intentional, knowing, and felony murder, the defendant is presumed to be convicted of the most serious offense of intentional murder, and judgment and sentence should be entered on that count. *Smith*, 233 Ill. 2d at 20-21, citing *People v. Davis*, 231 Ill. 2d 349, 358 (2008).

However, the *Smith* court affirmed the appellate court's finding that the trial courts had erred in refusing defendants' requests for separate verdict forms, and held that where "specific findings by the jury with regard to the offenses charged could result in different sentencing consequences, favorable to the defendant, specific verdict forms must be provided upon request and the failure to provide them is an abuse of discretion." *Smith*, 233 Ill. 2d at 23.

■ We find *Smith* inapposite to the case at bar, where, because counsel did not request separate verdict forms, the trial court was not asked to rule on whether separate verdict forms should be provided to the jury. The *Smith* case as it stands today is limited to situations in which the trial court actually denied a request for separate verdict forms. See *Smith*, 233 Ill. 2d at 23 (where "specific findings by the jury with regard to the offenses charged could result in different sentencing consequences, favorable to the defendant, specific verdict forms must be provided *upon request* and the failure to provide them is an abuse of discretion" (emphasis added)). If our supreme court wishes to expand this to a mandatory requirement that knowing, intentional, and felony murder always have separate verdict forms due to the different sentencing consequences, then it can do so. It is not our place to expand the holding of *Smith*, as defendant urges us to do.

■ Here, defendant's claim fails because he is unable to show the requisite deficient performance of counsel. Specifically, defendant has failed to overcome the presumption that counsel's decision not to request specific verdict forms was trial strategy. See *Martinez*, 342 Ill. App. 3d at 859. Defendant merely states in his brief that "[t]rial counsel had no strategic reason not to request a separate verdict form for felony murder." He fails to point us to any case law or offer persuasive argument to the end that defense counsel would not choose—as a part of trial strategy—to submit a general verdict form to the jury. Moreover, we find counsel's decision to proceed with a general verdict form reasonable where the law did not and does not place a mandatory burden on counsel to request separate verdict forms.

## Admonishing the Venire

■ Next, defendant contends that the trial court erred where it failed to question the venire about its understanding and acceptance of the following principles: the presumption of innocence; defendant's right not to present evidence; and defendant's right not to testify. In the alternative, defendant contends that he was denied the effective assistance of counsel where counsel failed to ensure that the venire was properly admonished regarding these principles. We disagree.

Initially, we note that defendant has forfeited this issue by failing to object at trial and failing to include it in his posttrial motion. *People v. Enoch*, 122 Ill. 2d 176, 186 (1988) (failure to properly preserve an alleged error by both an objection at trial and a written posttrial motion constitutes a procedural default of that error on review). Defendant admits that he failed to properly preserve this issue for appeal but urges us to consider it as plain error on the bases that

substantial rights are involved and that the evidence was closely balanced. 134 Ill. 2d R. 615; *People v. Herron*, 215 Ill. 2d 167, 186-87 (2005) (plain error rule permits consideration of errors even though technically waived for review where the evidence is closely balanced or where the claimed error is of such magnitude that there is a substantial risk that the defendant was denied a fair and impartial trial). We first consider whether any error occurred at all. *People v. Durr*, 215 Ill. 2d 283, 299 (2005).

To support his argument, defendant relies on *People v. Zehr*, 103 Ill. 2d 472, 477 (1984). In *Zehr*, our supreme court held that the trial court erred during *voir dire* where it refused defense counsel's request to ask questions regarding the State's burden of proof, defendant's right not to testify, and the presumption of innocence. *Zehr*, 103 Ill. 2d at 477. Specifically, the *Zehr* court held:

"We are of the opinion that essential to the qualification of jurors in a criminal case is that they know that a defendant is presumed innocent, that he is not required to offer any evidence in his own behalf, that he must be proved guilty beyond a reasonable doubt, and that his failure to testify in his own behalf cannot be held against him. If a juror has a prejudice against any of these basic guarantees, an instruction given at the end of trial will have little curative effect." *Zehr*, 103 Ill. 2d at 477.

In 1997, our supreme court amended Rule 431 to ensure compliance with the *Zehr* requirements. 177 Ill. 2d R. 431, Committee Comments. Following this amendment, Rule 431(b) required that, if requested by defendant, the court shall ask the potential jurors, individually or as a group, whether they understand the *Zehr* principles. 177 Ill. 2d R. 431(b). Rule 431(b), as amended in 1997 and in effect at the time of defendant's trial, " 'does not require the judge to ask the questions unless defendant's counsel has asked the court to do so.' " *People v. Gilbert*, 379 Ill. App. 3d 106, 109 (2008), quoting *People v. Williams*, 368 Ill. App. 3d 616, 623 (2006). Here, defense counsel did not ask the trial judge to question the venire regarding whether it understood and accepted the *Zehr* principles and, accordingly, the trial court was under no obligation to do so.

Nonetheless, defendant urges us to hold that an amended version of Rule 431(b), which was not in effect at the time of defendant's trial, applies retroactively to defendant's case. Specifically, our supreme court again amended Rule 431(b), effective May 1, 2007. The new rule deleted the language "[i]f requested by the defendant," and left the remainder of the rule unchanged. Rule 431(b) now provides, *inter alia*:

"The court shall ask each potential juror, individually or in a group, whether that juror understands and accepts the following

principles: (1) that the defendant is presumed innocent of the charge(s) against him or her; (2) that before a defendant can be convicted the State must prove the defendant guilty beyond a reasonable doubt; (3) that the defendant is not required to offer any evidence on his or her own behalf; and (4) that the defendant's failure to testify cannot be held against him or her; however, no inquiry of a prospective juror shall be made into the defendant's failure to testify when the defendant objects." Ill. S. Ct. R. 431(b) (eff. May 1, 2007).

Thus, Rule 431(b), as currently effective, imposes a *sua sponte* duty on the trial court to question each potential juror as to whether he understands and accepts the *Zehr* principles. However, defendant's trial was held in December 2006 and sentencing took place in February 2007. This court has already addressed defendant's contention regarding the retroactivity of Rule 431(b), and found that it is not retroactive, holding:

"The trial court's *sua sponte* duty to question each potential juror regarding his understanding and acceptance of the *Zehr* principles applies only to *voir dire* conducted on or after the amended rule's effective date of May 1, 2007; it does not apply retroactively to *voir dire* conducted prior to May 1, 2007." *Gilbert*, 379 Ill. App. 3d at 111.

Moreover, here, the court, although it had no *sua sponte* duty to do so, repeatedly informed the jury of the *Zehr* principles. At the beginning of jury selection, the court informed the entire venire:

"THE COURT: In fact, under our law and I'm sure many of you heard this many times but a defendant is presumed to be innocent of all the charges placed against him in the indictment that I read to you. The presumption of innocence remains with the defendant throughout every stage of the trial and during your deliberations on the verdict and it must be kept in your minds at all times during the presentation of evidence, the presentation—I'm sorry, the presumption of innocence is not overcome unless from all of the evidence in the case, when I say evidence I mean witnesses, exhibits, stipulations, from all of the evidence in the case you are convinced beyond a reasonable doubt that the defendant is guilty.

The defendant is not required to prove his innocence, the defendant is not required to testify in this case and the defendant is not required to present any evidence whatsoever in this case. The State at all times has the burden of proving the defendant guilty beyond a reasonable doubt and that burden remains with the State throughout every stage of the trial even during your deliberations on the verdict until you've actually reached a verdict."

Then, once jury selection began and the trial court seated the first 20 potential jurors to be questioned, the court informed them:

"THE COURT: Let me start with a couple of comments to the 20 of you that are in front of me. I talked about earlier that under our laws, one of the principles of criminal law is that the defendant is presumed to be innocent and that he does not have to present any evidence whatsoever in the case. The burden is always on the State.

Along with the defendant not having to present any evidence, what that means is that the defendant does not have to testify at all in a criminal case. First of all, let me ask if anybody understands those general principles, I'll ask you to raise your hand if you do not understand the principle I just talked about.

All right, indicating for the record none of the 20 in front of me is raising their hand.

Now a little bit of a different question. You all do understand those principles. Does anybody have a problem with those principles we just talked about?"

In response, one potential juror indicated that he understood the law, but did not agree with it and "might" hold it against defendant if he exercised his right not to testify. The court explained that defendant was not required to prove his innocence, nor was he required to testify, and that those instructions would be given at the conclusion of the case. The court again asked:

"THE COURT: Would everybody be able to hold the State to their burden of proving this individual guilty beyond a reasonable doubt of what he's charged with?"

No juror indicated he would not be able to do so. Five jurors were selected from that first group of 20, and 21 more jurors were then called. The court informed those potential jurors:

"THE COURT: I'm going to make general statements and if I ask you if anybody has a problem with this, you heard this a couple of times already. Principles of law in this country are that the defendant is always presumed innocent of the charges against him. The State will have the burden of proof at all times of proving the defendant guilty beyond a reasonable doubt. And the Defendant along those lines of what I just said, what that means is he doesn't have to present any evidence at all on his own behalf and in particular he does not have to testify in this case. Raise your hand if you have a problem with any of those general concepts of law."

None of those potential jurors indicated having a problem with those concepts. The remainder of the jury was selected from this second grouping.

Once the jurors were sworn, the court reminded them:

"THE COURT: [O]nce the evidence has been concluded, the defense if they choose may introduce evidence. As we highlighted many times, they have no obligation to do so."

Trial was held, and at the conclusion of the evidence, the trial judge instructed the jury:

"THE COURT: The defendant is presumed to be innocent of the charges against him. This presumption remains with him throughout every stage of the trial and during your deliberations on the verdict and is not overcome unless from all the evidence in the case you are convinced beyond a reasonable doubt that he is guilty. The State has the burden of proving the guilt of the defendant beyond a reasonable doubt, and this burden remains on the State throughout the case. The defendant is not required to prove his innocence. The fact that the defendant did not of [sic] testify must not be considered by you in any way in arriving at your verdict."

We find no error where the trial court properly complied with Rule 431(b) as it existed at the time of defendant's trial. Accordingly, defendant is unable to show plain error. See *Durr*, 215 Ill. 2d at 299.

In the alternative, defendant contends that his trial counsel was ineffective for: (1) failing to ask the veniremen about their understanding of the *Zehr* principles; and (2) failing to ask the judge to do so, either. We disagree.

A defendant alleging ineffective assistance of trial counsel must demonstrate both that counsel's representation was objectively unreasonable and that but for counsel's errors, there was a reasonable probability that the outcome of the trial would have been different. *Strickland*, 466 U.S. at 687-88, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064; *Palmer*, 162 Ill. 2d at 475.

We recently addressed this question in *People v. Yarbor*, 383 Ill. App. 3d 676 (2008). In *Yarbor*, we found that counsel was not ineffective for failing to request the optional questioning under Rule 431(b) and noted that, as here, "defendant has failed to cite a case in which an attorney was found to be ineffective for failing to request the optional questioning under Rule 431(b)." *Yarbor*, 383 Ill. App. 3d at 686. Defendant urges us to reject the reasoning in *Yarbor*, but we decline to do so. Defendant's argument here fails because he has failed to show that counsel's representation was objectively unreasonable.

### One Act, One Crime

■ Defendant next contends that two of his three convictions and sentences for home invasion must be vacated because they arose out of the same act in violation of the one-act, one-crime rule. We agree.

Although defendant failed to properly preserve this issue by raising it in the trial court, the supreme court has considered such a claim under the substantial rights prong of the plain error rule. *People v. Harvey*, 211 Ill. 2d 368, 389 (2004). Consistent with *Harvey*, we address defendant's claim.

In deciding whether two of defendant's convictions must be vacated, we first determine whether defendant's conduct constituted a single act or separate acts. *People v. Rodriguez*, 169 Ill. 2d 183, 186 (1996). If the conduct in question constituted a single act, the conviction in question must be vacated. *Rodriguez*, 169 Ill. 2d at 186. Under the one-act, one-crime rule, an "act" is defined as "any overt or outward manifestation which will support a different offense." *King*, 66 Ill. 2d at 566. A person commits home invasion where, in relevant part, he enters a dwelling place without authority when he knows or has reason to know that one or more persons is present, and uses force or threatens the imminent use of force upon a person within. 720 ILCS 5/12—11 (West 2006). The gravamen of a home invasion offense is unauthorized entry. *People v. Taylor*, 318 Ill. App. 3d 464, 472 (2000). A defendant may be convicted of only one count of home invasion where the defendant made but one entry into one dwelling, regardless of the number of occupants inside the dwelling. *People v. Cole*, 172 Ill. 2d 85, 102 (1996).

Here, defendant engaged in two crimes, *i.e.*, murder and home invasion. Regarding the home invasion, defendant entered the house at 6125 South Artesian Avenue where Camacho, Ulyses Brewer, and Robert Brewer all lived, only one time. Accordingly, two of the convictions must be vacated.

When a defendant is convicted of multiple crimes for the same act, the lesser offense is merged into the greater offense. *People v. Lee*, 213 Ill. 2d 218, 226-27 (2004). The legislature determines the relative gravity of all offenses. *Lee*, 213 Ill. 2d at 229. Here, defendant has three convictions for home invasion, all under section 12—11(a)(3) of the Illinois Criminal Code of 1961 (720 ILCS 5/12—11(a)(3) (West 2006)). Accordingly, we vacate defendant's convictions and sentences for two of the home invasion counts. We affirm defendant's conviction and sentence for the remaining home invasion count.

## CONCLUSION

For the aforementioned reasons, we affirm the judgment of the circuit court of Cook County, vacate two of defendant's convictions for home invasion, and, pursuant to our authority under Supreme Court Rule 615(b)(1), correct the mittimus. 134 Ill. 2d R. 615(b)(1); *People v. McCray*, 273 Ill. App. 3d 396, 403 (1995).

Affirmed in part and vacated in part; mittimus corrected.

O'MARA FROSSARD and TOOMIN, JJ., concur.