FIFTH DIVISION
February 26, 2010

Nos. 1-08-0862, 1-08-1025 cons.

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 04 CR 24248 |
| | ) | |
| DAVON MABRY, | ) | Honorable |
| | ) | Marcus Salone, |
| | ) | Judge Presiding. |
| Defendant-Appellant. | ) | |

JUSTICE LAVIN delivered the opinion of the court:

In the wake of an armed robbery that resulted in the shooting death of a store owner on South Halsted Street in the city of Chicago, defendant Devon Mabry was arrested, charged with first degree murder, armed robbery and burglary. He was tried and found guilty of first degree murder and armed robbery by a jury and was initially sentenced by the trial judge to a period of 75 years' imprisonment for the murder, to be served concurrently with 30 years' imprisonment for armed robbery. After defendant had filed his notice of appeal, the trial court apparently recognized a sentencing error and altered the term to 44 years' imprisonment for murder and 25 years for discharging a firearm, to be served consecutively with 6 years for armed robbery. For the several reasons detailed below, we affirm defendant's convictions for first degree murder and armed robbery, but vacate the sentences and remand to the trial court for resentencing.

## BACKGROUND

Defendant Devon Mabry, James Higgins, and Andre Howard were charged with first

degree murder and armed robbery for the shooting death of In Hwang on September 10, 2004, at his place of business at 93rd and Halsted in Chicago. While in custody, defendant made a videotaped statement to Assistant State's Attorney (ASA) Robert Robertson. Defendant's motion to suppress his inculpatory statements was denied and his videotaped statement was published for the jury at trial.

In the videotape, defendant explained that on September 10, 2004, around 2 p.m., he, Higgins, and Howard met outside an apartment building. There they discussed Higgins' dream that the three of them had robbed Hwang's beauty supply store. Because the dreamed criminal venture was successful, the three thought they could do it in real life. Thus began their planning of the robbery, the main feature of which was the use of use two guns– a .22-caliber revolver and a BB gun that resembled a .45-caliber automatic.

Fantasy became an unfortunate and fatal reality when the three men entered the victim's store, armed and intent on robbery. The then 18-year-old defendant walked in first, pulled the revolver out of his pocket, stood about five feet from Hwang, and pointed the gun at Hwang's chest. Higgins and defendant asked Hwang to open the register, but Hwang said he could not open it. Defendant walked around to the other side of the counter, seeking to impel Hwang to open the register by putting his gun against the victim's neck. Defendant said he began to get upset because the robbery was going according to neither the dream nor their plan. Howard grabbed some T-shirts from the racks and ran out of the store. After failing in his attempt to get the victim to open the register, defendant elected to steal everything out of Hwang's pockets, which basically consisted of a small amount of cash in a wallet and the victim's cell phone. At

2

that point, Hwang told defendants that he knew their faces and where they hung out.

Defendant and Higgins then began to leave, but upon reaching the door, defendant considered Hwang's statement about his ability to identify the perpetrators and then decided to shoot the store owner to eliminate the potential witness because he was frustrated by the botched robbery and was scared Hwang would call the police.

Prior to trial, defendant filed a motion to suppress his custodial statements. At the motion- to-suppress hearing, a number of witnesses were called regarding the events surrounding defendant's arrest and subsequent interrogation. Officer Shannon testified that he, Officer Maulin, and Officer Flagg arrested defendant at 12:12 p.m. on September 11, 2004, the day after the shooting and robbery. Upon arresting defendant, Officer Shannon said that he read defendant his *Miranda* rights. According to Shannon, defendant acknowledged that he understood his rights and stated that he did not wish to answer any questions. The three arresting officers arrived at Area 2 police headquarters at 1 p.m., placed defendant in an interview room, and turned him over to homicide detectives Filipiak and Fitzmaurice.

Detective Filipiak testified that he and Detective Fitzmaurice spoke with defendant around 1 p.m. Detective Filipiak, who testified that he was unaware that the arresting officer was told that defendant had invoked his right to remain silent, then advised defendant of his *Miranda* rights. According to Filipiak, defendant acknowledged that he understood each right, but then defendant provided an exculpatory statement. Defendant denied receiving his *Miranda* rights on either the occasion of his arrest by Officer Shannon or by any of the investigating detectives.

Detective Filipiak testified that the detectives interviewed defendant again at 1:45 p.m.–

3

Nos. 1-08-0862, 1-08-1025 cons.

this time at defendant's request– and Mirandized defendant.  Detective Filipiak stated that defendant waived his *Miranda* rights and inculpated himself.  Again, defendant denied being advised his *Miranda* rights.  Detectives Fitzmaurice and Filipiak spoke with defendant again at 6:45 p.m.  According to Detective Filipiak, defendant waived his *Miranda* rights and made another inculpatory statement.  Again, defendant denied receiving his *Miranda* rights.

Detective Spagnola testified that he and Detectives Harrison and Pacelli interviewed defendant on September 12, 2004, at 3:35 a.m.  Detective Spagnola stated that defendant was wearing sports-style attire.  Detective Spagnola testified that Detective Harrison read defendant his rights, and defendant understood his rights and gave an inculpatory statement.  Detective Spagnola then called the felony review unit, prompting the later arrival of ASA Robertson.

ASA Robertson testified that he interviewed defendant in Detective Spagnola's presence and that he read defendant his *Miranda* rights.  After this conversation with ASA Robertson, defendant gave a videotaped statement.  In the statement, defendant acknowledged that ASA Robertson Mirandized him prior to their first conversation and that he waived those rights.  Defendant signed a consent to videotape.  Defendant also stated that he was treated "very fairly" by the police and that he had no complaints about his treatment.

At the hearing on the motion to suppress, defendant testified that the police approached him around noon on September 11, 2004, put him on their car, handcuffed him, placed him in the backseat of the car, and transported him to the police station.  Once there, the officers placed him in an interview room on a steel bench and handcuffed him to a ring on the wall for five to six hours, during which time the police officers entered and asked him questions without informing

4

him of his rights. Defendant testified that he was dressed in basketball attire, which was unsuitable to the temperature of the air-conditioned room, and that he was cold, uncomfortable, and unable to move around to keep warm because he was seated on a metal bench and handcuffed to a metal ring on the wall. Defendant testified that he asked the police to turn the air conditioning down, to provide him with more clothes, and to allow him to make a phone call, but that each request was denied.

Defendant further testified that after speaking with Detective Spagnola, the detective walked him back toward the interview room, grabbed him in a forceful manner, pushed him into the room, and handcuffed him to the wall. Defendant stated that ASA Robertson was the first to read him his *Miranda* rights, but denied that ASA Robertson told him he had the right to remain silent or that anything he said could be used against him. Defendant testified that the first time he talked to anyone about the murder was on the videotape. Significant for our discussion, defendant did not testify that he EVER invoked his right to remain silent.

Defendant moved to suppress his custodial statements on multiple grounds, first asserting that he never received his *Miranda* warnings prior to the time that the ASA got involved. Second, defendant argued that his inculpatory statements were obtained as a result of physical, psychological, and mental coercion in violation of the fifth and fourteenth amendments. Third, defendant argued that the inculpatory statements were obtained as the result of a warrantless arrest in violation of the fourth amendment. At the end of the evidence, the trial court denied defendant's motion to suppress, finding "that [defendant] has not been truthful here today. There's no showing that the defendant's willpower was overborne in any way. There's

5

absolutely no showing that [defendant's] statement was anything less than voluntary." Defendant again raised this issue in his motion for a new trial.

During *voir dire*, the trial court asked a group of 60 to 80 potential jurors to indicate by a show of hands whether they would give the testimony of a police officer greater credibility than that of any other witness simply because that person is a police officer. The trial court then asked if anybody would give the testimony of police officers less credibility than that of any other witness. Two jurors responded to these questions. Defendant requested that the trial court ask each potential juror individually the questions regarding police officer credibility, but the trial court refused to do so.

The trial court then called potential jurors in three separate venire groups for individual questioning. Defendant again requested the trial court individually question each potential juror on the issue of police officer credibility, but the court refused to do so. Instead, the trial court re-asked the first venire as a group if they would afford greater or less weight to police officer testimony. The court also asked the second and third venire the questions regarding police officer credibility as a group, but did not ask the questions to each individual juror.

At the conclusion of the trial, the jury returned guilty verdicts for first degree murder and armed robbery. Defendant did not request separate verdict forms for first degree murder. After a sentencing hearing, the trial court declined to impose the death penalty and instead sentenced defendant to 75 years' imprisonment. Defendant filed a notice of appeal on March 11, 2008. On March 20, 2008, the trial court granted the State's motion to correct the mittimus to specify the respective sentences for armed robbery and for first degree murder. Over objection for lack of

jurisdiction, the trial court sentenced defendant to 69 years' imprisonment for murder to run consecutively with 6 years' imprisonment for armed robbery.

On appeal, defendant contends that: (1) he received ineffective assistance of counsel when trial counsel failed to move to suppress his inculpatory statements based on alleged violations of his allegedly invoked right to remain silent; (2) trial counsel's failure to preserve defendant's right to remain silent constitutes plain error for the purposes of appellate review; (3) the trial court denied defendant a fair trial by jury because it failed to properly and adequately determine during *voir dire* whether potential jurors would afford testifying police officers greater credibility than other witnesses; (4) the trial court erred in failing to provide separate first degree murder verdict forms for each theory of first degree murder; (5) remand is required because the trial court modified defendant's sentence without jurisdiction; and (6) the trial court failed to consider defendant's rehabilitative potential and imposed an excessive sentence. For the reasons expressed below, we reject each of the claimed errors but for one aspect of sentencing.

ANALYSIS

The first issue on appeal is the claim that defendant received ineffective assistance of counsel when trial counsel failed to move to suppress defendant's inculpatory statements based on an alleged violation of defendant's right to remain silent. To determine whether a defendant received ineffective assistance of counsel, we apply the two-pronged test established in Strickland v. Washington, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984). To prevail, defendant must show both that: (1) counsel's representation was so deficient as to fall below an objective standard of reasonableness, and (2) the deficient performance so prejudiced defendant

7

as to deny him a fair trial. People v. Perry, 224 Ill. 2d 312, 341 (2007).

Under the first prong, there is a strong presumption that trial counsel's action or inaction resulted from sound trial strategy. Perry, 224 Ill. 2d at 341-42. To overcome this strong presumption, defendant must demonstrate trial counsel's decision was so unreasonable and irrational that no reasonably effective defense attorney faced with similar circumstances would pursue that strategy. People v. King, 316 Ill. App. 3d 901, 916 (2000). The question of whether to file a motion to suppress evidence is traditionally considered a matter of trial strategy and should be left to the trial counsel's discretionary judgment. People v. Morris, 229 Ill. App. 3d 144, 157 (1992). Thus, reviewing courts should avoid the temptation of using hindsight to second-guess counsel's strategy. People v. Hill, 308 Ill. App. 3d 691, 707 (1999). Under the second prong of the Strickland test, defendant must prove there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. Perry, 224 Ill. 2d at 342. If either prong of the Strickland test is not met, defendant's claim must fail. Perry, 224 Ill. 2d at 342.

Defendant submits that trial counsel's failure to raise any argument regarding his invocation of his right to remain silent constitutes ineffective assistance of counsel, despite the multipronged motion to suppress that was filed and argued. Defendant further contends that the State cannot plausibly dispute that defendant invoked his right to remain silent upon arrest, given that the State's own witness, Officer Shannon, testified to that effect. In this regard, the present case is analogous to People v. Reed, 298 Ill. App. 3d 285 (1998), where defendant argued that trial counsel provided ineffective assistance during the hearing on his motion to suppress. In

Nos. 1-08-0862, 1-08-1025 cons.

Reed, counsel at trial argued that since the arresting officers failed to give defendant his *Miranda* warnings, the court should have suppressed any statements he made while at the police station. Reed, 298 Ill. App. 3d at 298. On appeal, however, defendant contended his counsel was ineffective for failing to argue that the police had denied defendant's request to have an attorney present during questioning. Reed, 298 Ill. App. 3d at 298. The court found no ineffective assistance, noting that "presumably, after interviewing the defendant and other witnesses, counsel determined that defendant did not invoke his right to counsel during any of the interrogation sessions." Reed, 298 Ill. App. 3d at 298. The court held that "counsel provided reasonable professional assistance by proceeding on the theory that the detectives failed to give defendant *Miranda* warnings." Reed, 298 Ill. App. 3d at 298.

In the case at bar, defendant testified that the police officers *never* read him his *Miranda* rights and that it was not until ASA Robertson arrived, prior to his videotaped statement, that he first received his *Miranda* warnings. The gravamen of defendant's testimony instead focused on the conditions of his custody and interrogation, claiming that he was physically abused, kept in an uncomfortable position in a cold interrogation room for many hours and was not allowed to make any phone calls to his family members. Trial counsel's motion to suppress veritably tracked the defendant's testimony during the hearing. First, trial counsel asserted that defendant never received his *Miranda* warnings. Trial counsel argued that defendant's inculpatory statements were obtained as a result of physical, psychological, and mental coercion in violation of the fifth and fourteenth amendments. Trial counsel also argued that the inculpatory statements were obtained as the result of a warrantless arrest in violation of the fourth amendment. The trial

9

court was not persuaded that the statement should have been suppressed.

Given the above, we find nothing unreasonable or irrational with this trial strategy, even if it proved unsuccessful. People v. Palmer, 162 Ill. 2d 465, 482 (1994). In light of defendant's own testimony, trial counsel presumably determined that defendant did not receive *Miranda* warnings and did not invoke his right to remain silent. "The reasonableness of counsel's actions must be evaluated from counsel's perspective at the time of the alleged error, and without hindsight, in light of the totality of circumstances, and not just on the basis of isolated acts." People v. Nowicki, 385 Ill. App. 3d 53, 82, (2008). We decline defendant's invitation to use hindsight to second-guess trial counsel's strategy or the ways in which he implemented that strategy. In view of our disposition of the first prong of the Strickland analysis, we need not address whether defendant suffered prejudice as a result of defense counsel's alleged deficiencies. People v. Rodriguez, 312 Ill. App. 3d 920, 926 (2000).

The next, related issue relates to the claim that counsel was ineffective for failing to preserve the issue of the failure of the police to honor the defendant's right to remain silent; but as noted above, according to both the written motion and the defendant's suppression hearing testimony, he was *not* advised of his *Miranda* rights after he was arrested. Defendant also made no claim at the suppression hearing that he had invoked his right to remain silent at the time of his arrest. See People v. Andras, 241 Ill. App. 3d 28, 35 (1992). For the first time on appeal, defendant argues that Officer Shannon's testimony establishes that he did, in fact, invoke his right to remain silent and that the police officers did not scrupulously honor that decision. Defendant's failure to raise this assertion in the trial court constitutes forfeiture. Andras, 241 Ill.

Nos. 1-08-0862, 1-08-1025 cons.

App. 3d at 36; People v. Womack, 216 Ill. App. 3d 540 (1991). Nonetheless, defendant requests that we review whether the admission of defendant's inculpatory videotaped statement after he invoked his right to remain silent constitutes plain error.

This court will review unpreserved error when a clear and obvious error occurs and: (1) the evidence is closely balanced; or (2) that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process. People v. Bannister, 232 Ill. 2d 52, 65 (2008). In addressing defendant's plain error contention, we must first determine whether there was any error at all. People v. Piatkowski, 225 Ill. 2d 551, 565 (2007).

Although only mentioned in a footnote in his counsel's appellate brief, defendant suggests that this error warrants reversal because it is so fundamental and of such magnitude that defendant would be denied the right to a fair trial without this court's consideration of the issue. We are not persuaded that any such error occurred. As discussed in detail above, trial counsel provided effective assistance when he moved to suppress defendant's inculpatory statements on three separate grounds. Having found that trial counsel did not err in failing to argue that defendant's allegedly invoked right to remain silent was violated, there can be no plain error. People v. Bannister, 232 Ill. 2d 52, 72 (2008). Therefore, defendant was not denied a fair trial by his trial counsel's failure to move to suppress his inculpatory statements based on violations of his right to remain silent.

Next, defendant claims the trial court abused its discretion in the method that it employed in determining whether potential jurors might afford police officers greater credibility than other witnesses in the trial. Defendant suggests that the trial court abused its discretion after it

11

Nos. 1-08-0862, 1-08-1025 cons.

discovered that certain potential jurors did not understand or did not hear the court's question regarding the credibility they would afford police officer testimony and nevertheless failed to individually reexamine those jurors who were ultimately empaneled.

It is axiomatic that the manner and scope of *voir dire* rest within the sound discretion of the trial court. People v. Dixon, 382 Ill. App. 3d 233, 243 (2008). In conducting the *voir dire,* the trial court is accorded broad discretion in determining which questions will be asked and which procedures will be followed. People v. Morgan, 152 Ill. App. 3d 97, 101 (1987). The trial court should always exercise its discretion in a manner that is consistent with the goals of *voir dire* – to assure the selection of an impartial jury, free from bias or prejudice, and grant counsel an intelligent basis on which to exercise peremptory challenges. Dixon, 382 Ill. App. 3d at 243. Upon review, the standard for evaluating a court's exercise of discretion during the voir dire is whether the questions and procedures created reasonable assurance that any prejudice or bias would be discovered. Morgan, 152 Ill. App. 3d at 101.

Here, we find no abuse of discretion by the trial court. The record indicates that two prospective jurors responded to the trial court's group questions regarding the credibility of police officers. See Morgan, 152 Ill. App. 3d at 101 (record indicated that individual prospective jurors responded to the court's group questions and that their responses were given careful consideration by the court). When a potential juror did not hear the question asked, the trial court repeated the question a second time. Upon defendant's objection, the trial judge explained that he was satisfied since he "raised the question, and [he was] convinced that everyone in the courtroom, a courtroom full of people, heard it."

12

Nos. 1-08-0862, 1-08-1025 cons.

Thereafter, the trial court called three separate venire panels of potential jurors. The trial court did not ask the first venire as a whole the questions regarding police officer credibility, but did ask the question to the second and third venire groups. Defendant contends that during this first venire group, five jurors were improperly empaneled without being asked the questions regarding police officer credibility. We disagree. The record indicates that the trial court asked or permitted the parties to ask appropriate follow-up questions to potential jurors from the first venire group. In fact, the State asked follow-up questions to three potential jurors about whether they would be able to judge police testimony the same as any other testimony. When a fourth potential juror indicated that her niece was a police officer, the trial court asked her if that would affect her previous response to the questions regarding police officer credibility. A fifth potential juror mentioned that she needed to change her answer regarding police officer credibility because her brother was beaten by police officers in the past. The trial court then asked her about the incident with her brother. Also, the trial court asked each potential juror whether there was anything else they would like to add that was not touched upon. Therefore, we conclude that the trial court did not abuse its discretion and that the questions posed to the venire, in whole or in part, were sufficient to have disclosed any prejudice or bias.

Next, defendant claims the trial court erred in failing to provide separate first degree murder verdict forms. The State charged defendant by indictment with first degree murder under three different theories: intentional or knowing, strong probability, and felony murder. 720 ILCS 5/9–1(a)(1) through (3) (West 2004). The State also charged defendant with armed robbery and burglary. 720 ILCS 5/18–2(a)(4), 5/19–1(a) (West 2004). The trial court submitted to the jury a

13

Nos. 1-08-0862, 1-08-1025 cons.

general verdict form for first degree murder, allowing the jury to find defendant guilty of first degree murder without specifying the theory upon which the jury relied. Defendant did not request separate verdict forms and did not object to the use of a general verdict form, but did include the objection in posttrial motions. As such, defendant contends that this court should review the issue as ineffective assistance of counsel or in the alternative as plain error.

Defendant submits that this failure constitutes ineffective assistance of counsel. We recently addressed this issue in People v. Braboy, 393 Ill. App. 3d 100, 108 (2009), in which defendant was charged with multiple counts of murder, home invasion, and armed robbery. Defendant was charged with first degree murder based upon three theories: intentional or knowing, strong probability, and felony murder. Braboy, 393 Ill. App. 3d at 101-02. Defendant contended that he was denied the effective assistance of counsel where trial counsel did not request separate verdict forms for the various theories of first degree murder under which defendant was charged. Braboy, 393 Ill. App. 3d at 104. In that case, the defendant relied heavily on our supreme court's finding in People v. Smith, 233 Ill. 2d 1, 23 (2009) (where "specific findings by the jury with regard to the offenses charged could result in different sentencing consequences, favorable to the defendant, specific verdict forms must be provided upon request and the failure to provide them is an abuse of discretion"). We, however, found Smith inapposite, noting that because counsel did not request separate verdict forms, the trial court was not asked to rule on whether separate verdict forms should be provided to the jury. Braboy, 393 Ill. App. 3d at 108. In Braboy, we explained that "the Smith case as it stands today is limited to situations in which the trial court actually denied a request for separate verdict

14

Nos. 1-08-0862, 1-08-1025 cons.

forms." Braboy, 393 Ill. App. 3d at 108. Similarly, in the case at bar, we decline to extend Smith to situations where trial counsel did not request separate verdict forms. As such, we conclude that trial counsel did not provide ineffective assistance where he did not request separate verdict forms.

Next, defendant contends that it was plain error for the trial court to submit the general verdict form. The present case is analogous to People v. Davis, 233 Ill. 2d 244 (2009). In Davis, the defendant was charged with aggravated battery, armed robbery and first degree murder. Davis, 233 Ill. 2d at 247. The first degree murder charge was brought under three different theories: intentional murder, strong probability murder, and felony murder. Davis, 233 Ill. 2d at 247. A general verdict form was submitted to the jury and it returned a general verdict of guilty of first degree murder. Davis, 233 Ill. 2d at 263. Defendant did not object to the general verdict form. Davis, 233 Ill. 2d at 263. The Davis court explained, "It is well settled that when an indictment alleges three forms for a single murder-intentional, knowing and felony murder-and a general verdict is returned, the net effect is that the defendant is guilty as charged in each count and there is a presumption that the jury found that the defendant committed the most serious of the crimes alleged, which is intentional murder." Davis, 233 Ill. 2d at 263.

Nonetheless, the Davis court conducted a plain error analysis due to defendant's lack of an objection to the general verdict form at trial. Davis, 233 Ill. 2d at 274. As previously indicated, this court will review unpreserved error when a clear and obvious error occurs and: (1) the evidence is closely balanced; or (2) that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process. Bannister, 232 Ill. 2d at 65.

15

Nos. 1-08-0862, 1-08-1025 cons.

Moreover, "the defendant has the burden to persuade the court that the error was prejudicial, that is, defendant must show that the evidence was so closely balanced that the error alone threatened to tip the scales of justice against him." Davis, 233 Ill. 2d at 274. The Davis court held that "the evidence of intentional and strong probability murder based on accountability was not closely balanced, and therefore any error in instructing the jury on felony murder was harmless." Davis, 233 Ill. 2d at 275.

In this case, the record indicates that defendant told ASA Robertson that prior to exiting the store, he stopped, turned back, looked at the victim, and shot him because he feared the victim would identify him to the police. Defendant said he was frustrated that the robbery had failed. Under these circumstances, similar to Davis, we find that the evidence of intentional murder was not closely balanced. Therefore, it was not plain error to submit a general verdict form for first degree murder, and the trial court properly entered judgments on the counts of intentional murder and armed robbery.

The final issues on appeal relate to sentencing by the trial court. Defendant argues that his sentence was improperly entered where the trial court modified it without jurisdiction. At the sentencing hearing, defendant was sentenced to 75 years' imprisonment for first degree murder (which included an enhancement for discharge of a firearm) to be served concurrently with 30 years' imprisonment for armed robbery. After defendant filed his notice of appeal, the State moved to correct the mittimus since both parties agreed that the sentence for armed robbery must run consecutively to the sentence for first degree murder. The trial court then specified a 69-year sentence for first degree murder (44 years and a 25-year enhancement) to run consecutively to a

16

Nos. 1-08-0862, 1-08-1025 cons.

6-year term for armed robbery.

In this case, defendant was subject to mandatory consecutive sentences. 730 ILCS 5/5–8–4(i) (West 2004). Where sentences are mandatorily consecutive and the defendant is sentenced to concurrent sentences, the sentences are void. People v. Harris, 203 Ill. 2d 111, 121 (2003). The trial court's attempt to correct its mistake was improper because it had already been divested of its jurisdiction. People v. Foster, 309 Ill. App. 3d 1, 16-17 (1999) (when the notice of appeal is filed, the appellate court's jurisdiction attaches *instanter*, and the cause is beyond the jurisdiction of the trial court). Although the parties agree that defendant's initial sentence is void and that the second sentence was improper because the trial court was divested of its jurisdiction, the State urges this court to correct defendant's initial sentence by imposing the consecutive sentences later set forth by the trial court: 69 years imprisonment for first degree murder to be served consecutively with 6 years for armed robbery.

The State directs us to People v. Arna, 168 Ill. 2d 107, 113 (1995), where our supreme court held that because the trial court order imposing concurrent terms was void, the appellate court had the authority to correct it at any time. However, our supreme court upheld the appellate court's finding that the concurrent sentences should be vacated and the cause remanded to the trial court for determination of the appropriate sentences to be imposed consecutively. Arna, 168 Ill. 2d at 112, 115. Similarly, in People v. Harris, 203 Ill. 2d 111, 121 (2003), our supreme court held that the trial court's imposition of concurrent sentences violated section 5/5–8–4 of the Unified Code of Corrections (730 ILCS 5/5–8–4 (West 1998)) and affirmed the decision of the appellate court vacating the sentence and remanding for the imposition of consecutive sentences.

17

Nos. 1-08-0862, 1-08-1025 cons.

Therefore, because the trial court's initial sentence is void, we vacate the sentence and remand for the imposition of consecutive sentences.

Because we have vacated the sentence, we need not address defendant's remaining arguments concerning whether the trial court abused its discretion and imposed an excessive sentence.

CONCLUSION

For the foregoing reasons, we affirm defendant's convictions, vacate the concurrent sentences, and remand to the trial court for the imposition of consecutive sentences.

Affirmed in part, vacated in part, and remanded for resentencing.

TOOMIN, P.J., and FITZGERALD SMITH, J., concur.