THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. TERRY L. BURNETT, Defendant-Appellant.

Third District   No. 3—91—0560

Opinion filed January 20, 1993.

Joseph N. Ehmann, of State Appellate Defender's Office, of Ottawa, for appellant.

Kevin W. Lyons, State's Attorney, of Peoria (John X. Breslin and Gary F. Gnidovec, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE BARRY delivered the opinion of the court:

Following a bench trial, the defendant, Terry L. Burnett, was convicted of aggravated criminal sexual assault (Ill. Rev. Stat. 1991, ch. 38, par. 12—14(b)(1)) and sentenced to six years' imprisonment. He appeals.

The record reveals that at trial, the victim's 13-year-old sister testified that on October 3, 1990, she was home with her mother's boyfriend, Steve Popple. Also present were her brother, her mother, a man named Derwin Popple, the defendant, and the victim. At 8:30 p.m., her mother went out with the defendant's sister. Derwin Popple left shortly thereafter, leaving the defendant home alone with the children. The victim's sister testified that when she and her brother went upstairs to bed, the defendant was watching a movie and the victim was taking a bath. The victim's sister stated that she was asleep when the victim eventually came upstairs.

The 10-year-old victim testified that on October 3, 1990, her mother went out drinking with her boyfriend, Steve Popple. Around 8 p.m., she took a bath that lasted a half-hour. When she got out of the tub, the defendant asked her to watch a movie with him. The defendant then asked her to put the movie "Coming to America" in the VCR. After putting the movie in the VCR, she sat down and the defendant told her to suck his "thing." She told the defendant "No," but he grabbed her head and forced it down to his penis. Afterwards, she went to the bathroom and vomited. She then went to the bedroom to try to wake up her sister. When she was unable to do so, she went to bed. The night after it happened, she told her mother that "Terry made me suck his thing."

The victim's mother testified that on the evening in question, she went out drinking with Debra Sturgis and the defendant's sister. She left her oldest daughter in charge of the other children. The defendant and Derwin Popple were in the house when she left. She returned home to find the defendant sleeping on the couch. At that time, he got up and left. Around 1 a.m. on October 5, the victim's mother heard the victim crying. She asked her why she was crying, and the victim replied that she did something bad. She then told her mother that something happened with the defendant.

At that point in the trial, the defendant objected on hearsay grounds to testimony regarding the substance of the conversation between the victim and her mother. The court mentioned the hearsay exception provided

under section 115—10 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1991, ch. 38, par. 115—10). The defendant responded that the exception did not apply because no hearing was held to determine if the statements were sufficiently reliable. Additionally, the defendant argued that the State did not comply with the statute because it failed to give the defendant both reasonable notice of its intention to offer the statement at trial and the particulars of the statement.

The State responded that it included the victim's mother's name in its list of possible witnesses and that police reports provided in discovery referred to the statements. The State then argued that a reasonable attorney could deduce that the prosecution would call the witness to testify about the statements.

The court agreed with the defendant's assertion that the State did not strictly comply with the statute. Nevertheless, it overruled the defendant's objection, finding that there was substantial compliance with the law.

The questioning of the victim's mother resumed, and she testified that the victim told her that the defendant "pulled her hair and made her suck his thing."

Police officer Dave Nelson then testified that he interviewed the victim. The defendant objected to Nelson testifying regarding the substance of the interview. This objection was also premised on the State's failure to comply with section 115—10, and was again overruled. Nelson subsequently testified that the victim told him that while the defendant was babysitting, she came out of the bathroom and went downstairs. The defendant asked her to put a tape in the VCR and then "suck his thing." The victim told Nelson that she said "No," but the defendant grabbed her and pushed her head towards his groin. She said that the defendant then told her to bite it. When she did, the defendant let her go. The victim told Nelson that the incident lasted 30 seconds and then she went upstairs.

Nelson testified that he also interviewed the defendant. The defendant denied any sexual involvement with the victim. He told Nelson that the victim took a bath, put a tape in the VCR, got him a pillow and blanket, and went to bed. Nelson stated that he did not check the defendant for bite marks.

Following the close of the State's case, the defendant testified on his own behalf. He stated that he arrived at the victim's home around 3 p.m. on October 3, 1990. Both Derwin Popple and Steve Popple were already at the house. Sometime later, the victim's mother left with his sister and Debbie Sturgis. Steve Popple left shortly thereafter, and the defendant went to the home of his aunt, Kimmi Burnett. The defendant returned to the victim's house at 9:30 p.m. Shortly thereafter, the victim came out of

the bathroom. The defendant asked her to put in a tape. She brought him a pillow and blanket and then went to bed. The defendant stated that he did not see her again until the next day. He claimed that he never asked her to do anything of a sexual nature and that he never did anything of a sexual nature with her.

Two of the defendant's aunts, Nancy Burnett and Kimmi Burnett, testified that he had a reputation for being law abiding. Kimmi Burnett stated that the defendant stopped by her house on October 3, 1990, with Shane Burnett.

Shane Burnett testified that he and the defendant went to Kimmi's house on October 3, 1990, and returned to the victim's house at about 8:30 or 9 p.m. He left shortly thereafter because he had to work the next day.

In rebuttal, the State entered into evidence the defendant's previous convictions for theft.

Based upon the foregoing evidence, the court found the defendant guilty and sentenced him to a six-year term of imprisonment.

On appeal, the defendant argues that the trial court erred in admitting into evidence the testimony of the victim's mother and Officer Nelson regarding what the victim had told them. The defendant contends that this testimony should have been inadmissible hearsay because section 115—10 of the Code of Criminal Procedure (Ill. Rev. Stat. 1991, ch. 38, par. 115—10) was not complied with. Specifically, the defendant contends that no notice of the testimony was given to the defendant prior to trial, and no pretrial hearing was held to consider the reliability of the statements.

Section 115—10 deals with the admissibility of "testimony of an out of court statement made by [the complainant child] describing any complaint of such act or matter or detail pertaining to any act which is an element of an offense which is the subject of a prosecution for a sexual act perpetrated upon a child." Ill. Rev. Stat. 1991, ch. 38, par. 115—10(a)(2).

The statute provides:

"(b) Such testimony shall only be admitted if:

(1) The court finds in a hearing conducted outside the presence of the jury that the time, content, and circumstances of the statement provide sufficient safeguards of reliability; and

(2) The child either:

(A) Testifies at the proceeding; or

(B) Is unavailable as a witness and there is corroborative evidence of the act which is the subject of the statement." Ill. Rev. Stat. 1991, ch. 38, pars. 115—10(b)(1), (b)(2).

■ It is undisputed that no hearing was held in the instant case. However, while the requirement of a "hearing outside the presence of the jury" is not wholly inapplicable to bench trials, the trial judge is presumed to have considered only admissible evidence. Accordingly, he may be presumed to have considered the time, content, and circumstances under which the statement was made in determining the reliability of the statement. *People v. Roy* (1990), 201 Ill. App. 3d 166, 558 N.E.2d 1208.

In *Roy*, a case tried before the court, the failure to hold a hearing was not plain error even though the trial court never specifically articulated its findings as to the reliability of the statements. The appellate court said, "The requirement the hearing be held 'outside the presence of the jury' does not render the requirement inapplicable to bench trials. However, it is a well-established rule that the trial court, as a trier of fact, is presumed to have only considered admissible evidence in reaching its determination. (*People v. Finn* (1978), 68 Ill. App. 3d 126, 385 N.E.2d 103.) Accordingly, we find that in admitting Gremmels' statements into evidence, the trial court appropriately considered the time, content, and circumstances of the statements were sufficient to establish their reliability even though it did not articulate such a finding. While the trial court should have made such a specific finding, its absence does not constitute plain error under these circumstances." *Roy*, 201 Ill. App. 3d at 183.

In *People v. Hart* (1991), 214 Ill. App. 3d 512, 573 N.E.2d 1288, also a bench trial, following *Roy* the appellate court said: "In *Roy*, the failure to conduct a hearing was not held to be error even though the trial court never specifically articulated its findings as to the reliability of the statements. In the present case, however, the court noted, when making its determination regarding the admissibility of the statements, that it believed that there were sufficient safeguards of reliability. Again, at the close of the trial, when determining defendant's guilt, the court once again noted that it admitted M.T.'s statements because it believed that she did not have time to fabricate the story concerning the sexual encounter. We find that under these circumstances, the fact that no separate hearing was held was harmless error." *Hart*, 214 Ill. App. 3d at 524-25. See also *People v. Morton* (1989), 188 Ill. App. 3d 95, 543 N.E.2d 1336 (harmless error to admit testimony of deputy sheriff in regard to statements made to him even though court denied defendant's request for hearing to determine reliability).

Here, the court went further than in *Roy* and *Hart* and specifically noted, "The court is of the opinion that the evidence, that I find to have been credible, was clear and convincing. And especially the evidence of [the victim]." Under these circumstances, and the case law, we cannot say the failure to hold a separate hearing constituted reversible error.

Turning our attention to the notification requirement of section 115—10, we note that the proponent of the statement is supposed to "give the adverse party reasonable notice of his intention to offer the statement and the particulars of the statement." Ill. Rev. Stat. 1991, ch. 38, par. 115—10(d).

■■ The defendant contends that no such notice was given and that he was "taken completely by surprise when the State offered and the court allowed the hearsay testimony." However, as the trial court noted, the State included both the victim's mother and Officer Nelson in the list of witnesses it provided to the defendant. Additionally, the substance of their testimony was contained in the police reports. Accordingly, the trial court properly concluded that there was certainly no surprise as to what their testimony might be. We conclude that the State substantially complied with the statute and that no reversible error occurred.

For the forgoing reasons, the judgment of the circuit court of Peoria County is affirmed.

Affirmed.

McCUSKEY, P.J., and SLATER, J., concur.