**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2024 IL App (3d) 220035-U

Order filed January 22, 2024
_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2024

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court |
| | ) | of the 18th Judicial Circuit, |
| Plaintiff-Appellee, | ) | Du Page County, Illinois. |
| | ) | |
| v. | ) | Appeal No. 3-22-0035 |
| | ) | Circuit No. 12-CF-1269 |
| | ) | |
| JUAN M. GRANADOS, | ) | The Honorable |
| | ) | Brian F. Telander, |
| Respondent-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE HETTEL delivered the judgment of the court.
Presiding Justice McDade and Justice Peterson concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*:    (1) The evidence was sufficient to support  conviction for criminal sexual assault despite's defendant's claim that sex was consensual where defendant's version of events was not supported by physical evidence; (2) the trial court properly admitted testimony from victim's sister and boyfriend about defendant's prior acts of domestic violence that came within a statutory hearsay exception and was not testimonial; (3) the trial court properly denied defendant's request for a jury instruction on second degree murder where defendant saw a video of his ex-wife having sex with someone else, and (4) defendant was not denied effective assistance by counsel's failure to object to jury being given one verdict form combining all theories of first degree murder.

¶ 2 Defendant Juan M. Granados was charged with murdering and sexually assaulting his ex-wife, Nancy. The jury found defendant guilty of both charges, and the trial court sentenced defendant to consecutive prison terms of 40 years for first degree murder and 10 years for criminal sexual assault. Defendant appeals, arguing that (1) the evidence was insufficient to prove him guilty beyond a reasonable doubt of criminal sexual assault; (2) the trial court erred in allowing Nancy's sister and boyfriend to testify about prior incidents of domestic violence that Nancy told them defendant committed against her; (3) the trial court erred in allowing Nancy's boyfriend to testify that Nancy told him defendant "raped" her; (4) the trial court erred in refusing to instruct the jury about second degree murder; and (5) he was denied effective assistance of counsel. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4 On June 26, 2012, the State charged defendant Juan Granados in a nine-count indictment in connection with the death of Nancy Bustos. Counts 1 and 2 alleged intentional first degree murder (720 ILCS 5/9-1(a)(1) (West 2010)); counts 3 through 5 alleged knowing first degree murder (*id*. § 9-1(a)(2)); count 6 alleged felony first degree murder while committing aggravated criminal sexual assault (*id*. § 9-1(a)(3)); count 7 alleged felony murder while committing criminal sexual assault (*id*.); count 8 alleged aggravated criminal sexual assault (*id*. § 11-1.30(a)(2)); and count 9 alleged criminal sexual assault (*id*. § 11-1.20(a)(1)).

¶ 5 Defendant was arrested in Mexico in June 2016. Thereafter, defendant was extradited and returned to Du Page County. Prior to trial, the State dismissed counts 6 and 8 of the indictment. The State also filed a motion seeking to admit testimony from Nancy's daughter, sister and boyfriend about prior incidents of domestic violence defendant committed against Nancy, pursuant to section 115-10.2a of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/115-10.2a

2

(West 2020)). Defendant objected, arguing that the testimony was inadmissible because it (1) violated his sixth amendment rights, (2) did not fit within the requirements of section 115-10.2a of the Code; and (3) lacked "circumstantial guarantees of trustworthiness." The trial court granted the State's motion to admit the testimony.

¶ 6 Defendant's trial took place in February 2021. At trial, the evidence established that defendant and Nancy married in 2000. In 2002, they had a daughter, N.G., and in 2007, they had a son, E.G., who was born with special needs. In 2010, defendant and Nancy divorced. Soon thereafter, Nancy married Jose Hernandez Tovar, a friend of her father's, to assist him with his immigration status. Nancy and Tovar never lived together.

¶ 7 Surveillance videos showed Nancy checking out of a motel with Daniel Beckley on the morning of October 15, 2011. Phone records showed that Nancy called defendant at 4:12 pm on October 15, 2011, and talked to him for nearly 10 minutes. Nancy sent text messages to defendant at 5:33 and 5:34 pm that day.

¶ 8 On October 16, 2011, Nancy's father and brother went to defendant's apartment in Glen Ellyn and found Nancy's vehicle in the parking lot. When no one answered the door to defendant's apartment, Nancy's father and brother called the police. Police entered the apartment and found Nancy dead in the bathtub with her pants pulled down below her knees. Police found damage to the lower portion of the master bedroom door and a clump of hair along the doorway. Police found no other damage in the apartment and saw no rips or tears in Nancy's clothing. Soap residue was found under Nancy's fingernails, a bar of soap containing gouges consistent with fingernails was found next to the bathtub, and pieces of toilet paper were found inside the bathtub. Nancy's clothing was wet. Testing showed the presence of semen belonging to defendant on Nancy's vagina and on toilet paper in the bathtub.

¶ 9        Dr. Jeffery Harkey, a forensic pathologist, performed Nancy's autopsy. He testified that Nancy had several abrasions on her neck and "hemorrhages deep in the muscles" of her neck, leading to his conclusion that Nancy's "cause of death was manual strangulation." He also found several small bruises on Nancy's body but did not believe they were defensive wounds. Dr. Harkey used a sexual assault evidence collection kit on Nancy because "[s]he's partially undressed, and the circumstances are suspicious." He found no evidence of vaginal trauma to Nancy but testified that it is "the norm" for a woman's vagina not to be injured during sexual assault.

¶ 10       Defendant testified that he and Nancy divorced on June 14, 2010, and Nancy remarried Tovar right away. Defendant testified that Nancy and his children continued living with him after the divorce "[b]ecause the divorce was arranged, it wasn't real." Defendant testified that he and Nancy fought during their marriage, sometimes physically. He testified that he and Nancy pushed and slapped each other. Defendant denied ever forcing Nancy to have sex with him.

¶ 11       Defendant testified that Nancy spent the night with him in their Glen Ellyn apartment on October 12, 2011, but not any other night that week. He testified that Nancy willingly had sex with him on October 12, 2011, and the next morning. Defendant testified that after school on October 14, 2011, N.G. told him that Nancy had a boyfriend and that she, E.G. and Nancy had stayed at the boyfriend's house.

¶ 12       Defendant testified that on October 15, 2011, Nancy came to his apartment with E.G. According to defendant, Nancy took him to the bedroom and had sex with him. Defendant denied forcing Nancy to have sex. After sex, Nancy "went to the bathroom to clean herself." After that, defendant told Nancy what N.G. told her a few days earlier about Nancy having a boyfriend. Nancy admitted she slept with someone but said she did it only once. While they were arguing, Nancy

4

received two text messages, which she told defendant were from her sister. Defendant grabbed Nancy's phone and saw the texts were from Daniel, Nancy's boyfriend.

¶ 13     Defendant testified that he was upset after seeing the texts, so he went to the living room, where E.G. was, picked up his phone, turned it on and saw two texts from Nancy. The first was a video of a white man "doing a stripper move" and "playing with his private part." The second was a video of Nancy "having sex with a man." Upon seeing those texts, defendant said: "I started shaking, my hands, my body, shaking. And everything got fuzzy, and I couldn't breathe well. And I could hear my heartbeat, my heartbeat. And I started crying, and then I didn't know anything else." Defendant said he did not remember grabbing Nancy "at that moment" but "remembered afterwards." He said he later remembered that he "took her by her neck" and "squeezed her" until "she wasn't reacting." Defendant then testified that he carried her to the bathtub and "put some water on to see if she would wake up." When Nancy did not react, defendant assumed she was dead. Defendant said Nancy was "fully clothed" when he placed her in the bathtub.

¶ 14     Defendant testified that he called his brother Jaime and asked for his car. Defendant met Jaime at his mom's house and got the keys to Jaime's car. He told Jaime he "had done something bad" and "had to leave." Defendant fled to Mexico, where he remained for more than four years.

¶ 15     Defendant sent a letter to Bustos' family on October 25, 2011. In that letter, defendant admitted that he and Nancy "fought hard" and that he "pushed her three times" in front of N.G. but denied that he hit Nancy "regularly." He explained that on October 15, 2011, Nancy came to his apartment and "took me over to the bed and we were together." After that, they argued. Defendant wrote:

"I felt like something came over me. My vision became cloudy, like when it becomes night time: I couldn't breathe well: My hands were shaking. I felt something super-natural: I

5

couldn't think, I couldn't remember anything until I began to drive to my mother's house.

I got there I remember, and then I began: to remember: I remember that I grabbed her by

the neck. I didn't know how hard I squeezed her, I didn't know: With that strength I don't

know for how long: What I do remember is that when I let her go she was no longer

breathing: I remember I tried to awaken her: And I couldn't: Then I took her to the

bathroom and put some water on her to see if I could awaken her but she did not wake up:

I didn't know what to do: I didn't think, I only remember that I took my son and I drove.

*** "

The letter was admitted into evidence.

¶ 16        In his testimony at trial, defendant denied that he planned to kill Nancy. Defendant also

denied ever hitting Nancy with a closed fist or dragging her by her hair. He said he did not

remember if he ever hit Nancy with a shoe.

¶ 17        N.G., the 17-year-old daughter of Nancy and defendant, testified that her parents

"sometimes" did not get along. She testified that she remembered defendant hitting her mother

"one time." N.G. was interviewed approximately one week after her mother's death when she was

nine years old. In that interview, N.G. said that defendant hit her mother "all the time" and "for no

reason." N.G. also stated that defendant sometimes dragged her mother by the hair. During the

interview, N.G. also described occasions when defendant punched, scratched, kicked, and hit

Nancy with a shoe. N.G. told the interviewer that Nancy was afraid of defendant.

¶ 18        Nancy's sister Katherine testified. During Katherine's testimony, defendant asked the court

for a limiting instruction, which the trial court gave to the jury, stating:

        "Ladies and gentlemen, as you have been told on previous occasions, evidence is about

        to be received that the defendant was involved in offenses or conduct other than those

6

charged in the indictment. The evidence has been received on the issues of the defendant's intent and propensity, and may be considered by you only for that limited purpose.

It's for you to determine whether the defendant was in fact involved in the offenses or conduct and, if so, what weight should be given to this evidence on the issues of intent and propensity."

Defendant did not object to the substance of Katherine's testimony.

¶ 19 Katherine testified that Nancy told her that defendant had been physically violent with her throughout their marriage. Katherine testified that Nancy told her approximately a week before her death that defendant hit her with a belt. Katherine testified that when she confronted defendant about what Nancy said, defendant "had a smirk, smile on his face." When Katherine said "it's not funny," defendant said "he didn't do it." Within the last couple weeks of Nancy's life, Katherine thought she "probably" saw Nancy with a bruise she tried to hide with makeup. Approximately one week before her death, Nancy called Katherine crying and said "she was scared for her life." Nancy told Katherine that defendant said he would put her in the hospital if she left him. Within the last week of her life, Nancy told Katherine that defendant said he would kill her if she left him. Katherine also testified that during the last week of her life, Nancy told her she did not want to have sex with defendant because she was with someone else. Nancy told Katherine she felt like defendant was "forcing her" to have intercourse with him, but Nancy stood up for herself and told him, "no." Nancy told Katherine she wanted to marry Daniel.

¶ 20 Daniel Beckley testified that he met Nancy in an online dating app at the end of June or early July 2011. He first met her in person at the end of July 2011, and saw her every day after that. He said he was her boyfriend. Daniel lived with his parents in Geneva and said Nancy lived in an apartment in Glen Ellyn. Daniel testified that Nancy spent the night with him in his parents'

7

house "around" ten times. Daniel said that Nancy was divorced from defendant but still had contact with him. Daniel said that "there was a lot of arguing" between defendant and Nancy.

¶ 21    Daniel testified that Nancy, N.G. and E.G. stayed with him at his parents' house from October 7-11, 2011. Daniel testified that Nancy received a phone call from defendant on October 11, 2011. At that point, defense counsel asked the court to provide jurors with "the limiting instruction." The court gave the jury the same instruction it gave during Katherine's testimony. Daniel testified that Nancy placed the call on speakerphone so Daniel could hear what defendant said. Daniel said defendant and Nancy were arguing. Daniel said defendant wanted to know more about him and asked Nancy "to take him to this fucking guy." According to Daniel, defendant said, "I'll kill you and go to Mexico, bitch." Daniel also testified that defendant said, "I'll find out who this guy is. I'll follow you. You'll take me to him. I'll kill you and him."

¶ 22    Daniel testified that Nancy and her children stayed at Nancy's apartment on October 12, 2011. Daniel described Nancy as "not her bubbly self" the next day. He said: "She was very quiet. She was looking down at the ground. She had sad eyes." When Daniel questioned Nancy, she said, "I can't believe he raped me." Daniel asked, "What are you talking about? What happened? Who?" Daniel said Nancy "didn't want to talk about it, and she shut down, and I left it at that." Later, Nancy told Daniel that defendant "grabbed her by her hair, put his hand on her mouth, tried to suck on her neck, and told her to take that to your fucking guy."

¶ 23    Daniel testified that he, Nancy and E.G. spent the night at a Super 8 in St. Charles on October 14, 2011. That evening, Nancy received text messages from defendant telling her he was meeting a woman. According to Daniel, Nancy responded, "I don't care. Leave me alone." The next morning, Nancy received text messages and phone calls from defendant. During one of the

8

phone calls, defendant said, "you're done, bitch." Daniel, Nancy and E.G. left the hotel room around noon on October 15, 2011.

¶ 24        Daniel testified that around 4 pm on October 15, 2011, Nancy told defendant she was going to drop off E.G. at defendant's apartment. During that conversation, defendant said, "[T]his is your last chance. Come stay with me tonight." Nancy responded, "[N]o. I don't love you anymore. Just let me live my life. I don't want to be with you anymore." Defendant then said, "[O]kay ***. That's fine." Daniel and Nancy then parted ways. Daniel expected Nancy to return in about an hour but never heard from her again.

¶ 25        At the jury instruction conference, defense counsel requested that the jury be given instructions regarding second degree murder and involuntary manslaughter. The trial court denied the request. The jury was given a single instruction consolidating all the theories of first degree murder (intentional, knowing and felony murder) and two general verdict forms for first degree murder. One form stated: "We, the jury, find the defendant Juan Granados guilty of first degree murder." The other form stated: "We, the jury, find the defendant Juan Granados not guilty of first degree murder."

¶ 26        The jury found defendant guilty of first degree murder and criminal sexual assault. Defendant filed a motion for a new trial arguing, in part, that the trial court erred in (1) allowing "hearsay evidence of domestic violence" because the testimony violated his "sixth amendment rights and lacked circumstantial guarantees of trustworthiness", and (2) refusing to give the jury instructions about second degree murder and involuntary manslaughter. Thereafter, defendant filed an amended motion for a new trial or judgment notwithstanding the verdict arguing, in part, that defense counsel erred in not objecting to the general instruction and verdict form for first degree murder. Attached to that motion was an affidavit from defense counsel stating that their failure to

9

ask for separate verdict forms on the felony murder counts "was in no way whatsoever part of our trial tactics."

¶ 27     The trial court denied defendant's motion and sentenced defendant to prison terms of 40 years for first degree and 10 years for criminal sexual assault, to be served consecutively. Defendant filed a motion to reconsider sentence, which the trial court denied.

## II. ANALYSIS

¶ 28                              A. Sufficiency of Evidence

¶ 29     First, defendant argues that the State failed to prove him guilty beyond a reasonable doubt of criminal sexual assault because he had consensual sex with Nancy.

¶ 30     When a defendant challenges the sufficiency of the evidence, a reviewing court must determine whether, viewing all the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Collins,* 214 Ill. 2d 206, 217 (2005). When reviewing the evidence, it is not our function to retry the defendant, nor will we substitute our judgment for that of the trier of fact. *Id*. "We will not reverse a conviction unless the evidence is so improbable, unsatisfactory, or inconclusive that it creates a reasonable doubt of defendant's guilt." *Id.*

¶ 31     "A person commits criminal sexual assault if that person commits an act of sexual penetration and *** uses force or threat of force[.]" 720 ILCS 5/11-1.20(a)(1) (West 2020). "Force or threat of force" includes the following situations: "(1) when the accused threatens to use force or violence on the victim or any other person, and the victim under the circumstances reasonably believes the accused has the ability to execute that threat; or (2) when the accused overcomes the victim by use of superior strength or size, physical restraint, or physical confinement." *Id*. § 11-

10

0.1. Evidence of injury to the victim is not necessary to prove force. *People v. Mpulamasaka*, 2016 IL App (2d) 130703, ¶ 96.

¶ 32    Consent by the victim is a defense to criminal sexual assault. 720 ILCS 5/11-1.70(a) (West 2020). "'Consent' means a freely given agreement to the act of sexual penetration or sexual conduct in question." *Id*. § 11-0.1. "Lack of verbal or physical resistance or submission by the victim resulting from the use of force or threat of force by the accused shall not constitute consent." *Id*. The absence of injury to the victim is not proof that the victim consented. *Mpulamasaka*, 2016 IL App (2d) 130703, ¶ 96.

¶ 33    A jury can find a defendant guilty of criminal sexual assault where the victim is dead, the defendant claims the victim consented, and there is no evidence of vaginal trauma to the victim. See *People v. Cloutier*, 156 Ill. 2d 483, 503-04 (1993). Circumstantial evidence of sexual assault exists when the victim is found nude. See *id*. at 504. Bruises and abrasions on a victim's body that are consistent with strangulation are consistent with the use of force. *Id*. at 505.

¶ 34    Here, defendant testified that he and Nancy had consensual sex before he killed her. However, the jury was free to reject defendant's testimony, particularly since his version of events was inconsistent with the physical evidence found by the police at the crime scene. Defendant testified that after he and Nancy had sex, Nancy went into the bathroom, cleaned herself up, and then returned to the bedroom fully clothed. According to defendant, he and Nancy then argued, Nancy sent him the two text messages that enraged him, and he strangled her. He further testified that Nancy was "fully clothed" when he placed her in the bathtub. However, when police found Nancy, she was not "fully clothed." Her pants were pulled down below her knees. Dr. Harkey used a sexual assault evidence collection kit on Nancy because "[s]he's partially undressed, and the

11

circumstances are suspicious." Swabs from Nancy's vagina showed the presence of semen from defendant, establishing that defendant had sex with Nancy.

¶ 35    While there was no evidence of vaginal trauma to Nancy, such evidence was not necessary to prove that defendant forced Nancy to have sex with him or that Nancy did not consent. See *id*. at 503-05; *Mpulamasaka*, 2016 IL App (2d) 130703, ¶ 96. In fact, Dr. Harvey testified that it is "the norm" for sexual assault victims to not have vaginal injuries. Additionally, Nancy's strangulation injuries were consistent with the use of force. See *Cloutier*, 156 Ill. 2d at 505. Thus, the jury was free to reject defendant's testimony that he had consensual sex with Nancy and conclude, based on the condition of Nancy's body, that defendant not only killed Nancy but also sexually assaulted her.

¶ 36                           B. Prior Incidents of Domestic Abuse

¶ 37    Next, defendant argues that the trial court erred in ruling that statements Nancy made to Daniel and Katherine about prior incidents of domestic violence were admissible under section 115-10.2a of the Code (725 ILCS 5/115-10.2a (West 2020)). Defendant contends that the statements should have been excluded because section 115-10.2a of the Code conflicts with and is superseded by Illinois Rule of Evidence 804 (Ill. R. Evid. 804 (eff. Jan 1, 2011)) and section 115-10.4 of the Code (725 ILCS 5/115-10.4 (West 2020)).

¶ 38    To preserve an issue for appeal, the defense must do two things in the trial court: (1) make a contemporaneous objection, and (2) include the issue in a written posttrial motion. *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). A defendant's objection to evidence on specific grounds waives the defendant's right to object to the evidence on any other grounds. *People v. Barrios*, 114 Ill. 2d 265, 275 (1986).

12

¶ 39    Here, defendant neither objected to Katherine's nor Daniel's testimony at trial nor did he raise the issues he raises now in his posttrial motion. While defendant argued in his posttrial motion that the testimony of Katherine and Daniel was inadmissible, he did so on the grounds that the testimony violated his "sixth amendment rights and lacked circumstantial guarantees of trustworthiness." He did not assert, as he does here, that the testimony was inadmissible because section 115-10.2a of the Code is preempted and superseded by Illinois Rule of Evidence 804 and section 115-10.4 of the Code. Because defendant did not raise those arguments at trial, he has forfeited them and cannot raise them for the first time on appeal. See *Barrios*, 114 Ill. 2d at 275.

¶ 40    Nevertheless, defendant contends that we can review this issue for plain error. The plain error doctrine permits an appellate court to reverse where a clear or obvious error occurred and either: (1) the evidence at trial was so closely balanced that this error could have tipped the scales against the defendant, or (2) the unpreserved error was so serious that it challenged the integrity of the judicial process and the fairness of the defendant's trial. *People v. Herron,* 215 Ill. 2d 167, 186-87 (2005). Before we analyze the two prongs of the plain error doctrine, our first step is to determine whether any error occurred because only if there was error can there be plain error. See *id.* at 187.

¶ 41    To determine if an error occurred, we must examine the statutes and rules at issue. The same principles of interpretation govern both statutes and rules of evidence. *People v. Deroo*, 2022 IL 126120, ¶ 19. We must ascertain and give effect to the drafters' intent. *Id.* "The most reliable indicator of that intent is the language used, which should be given its plain and ordinary meaning." *Id.* When language is clear and unambiguous, we must apply the language used. *Id.* The interpretation of both a statute and a rule of evidence are questions of law that we review *de novo. Id.*

13

¶ 42    "Where two statutes are allegedly in conflict, a court has a duty to interpret the statutes in a manner that avoids an inconsistency and gives effect to both statutes, where such an interpretation is reasonably possible." *Barragan v. Casco Design Corp.*, 216 Ill. 2d 435, 441-42 (2005). Additionally, courts must avoid interpreting statutes and rules of evidence to conflict with each other whenever possible. See *People v. Pitts*, 2016 IL App (1st) 132205, ¶ 73. However, when two statutory provisions are irreconcilable, the more specific controls over the more general. See *Stone v. Department of Employment Security Board of Review,* 151 Ill. 2d 257, 266 (1992). A general statute is one that applies to cases generally while a specific statute relates to only one subject. See *Hernon v. E.W. Corrigan Construction Co.,* 149 Ill. 2d 190, 195 (1992).

¶ 43                              1. Section 115-10.2a of the Code

¶ 44    Section 115-10.2a of the Code provides in pertinent part:

"(a) In a domestic violence prosecution, a statement, made by an individual identified in Section 201 of the Illinois Domestic Violence Act of 1986 as a person protected by that Act, that is not specifically covered by any other hearsay exception but having equivalent circumstantial guarantees of trustworthiness, is not excluded by the hearsay rule if the declarant is identified as unavailable as defined in subsection (c) and if the court determines that:

(1) the statement is offered as evidence of a material fact; and

(2) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and

(3) the general purposes of this Section and the interests of justice will best be served by admission of the statement into evidence.

14

(b) A statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, the proponent's intention to offer the statement, and the particulars of the statement, including the name and address of the declarant.

(c) Unavailability as a witness includes circumstances in which the declarant:

(1) is exempted by ruling of the court on the ground of privilege from testifying concerning the subject matter of the declarant's statement; or

(2) persists in refusing to testify concerning the subject matter of the declarant's statement despite an order of the court to do so; or

(3) testifies to a lack of memory of the subject matter of the declarant's statement; or

(4) is unable to be present or to testify at the hearing because of health or then existing physical or mental illness or infirmity; or

(5) is absent from the hearing and the proponent of the statement has been unable to procure the declarant's attendance by process or other reasonable means; or

(6) is a crime victim as defined in Section 3 of the Rights of Crime Victims and Witnesses Act and the failure of the declarant to testify is caused by the defendant's intimidation of the declarant as defined in Section 12-6 of the Criminal Code of 2012." 725 ILCS 5/115-10.2a(a)-(c) (West 2020).

¶ 45          For section 115-10.2a to apply, the following requirements must be met: (1) the declarant must be "protected by the Illinois Domestic Violence Act of 1986" (Act); (2) the declarant must

be "unavailable"; and (3) the trial must be "a domestic violence prosecution." [1] See *id*. § 115-10.2a(a).

¶ 46    Turning to the first requirement, "any person abused by a family or household member" is protected by the Act. 750 ILCS 60/201(a)(i) (West 2020). "'Abuse' means physical abuse, harassment, intimidation of a dependent, interference with personal liberty or willful deprivation[.]" *Id.* § 103(1). "Physical abuse includes sexual abuse ***." *Id*. § 103(14). "'Family or household members' include spouses [and] former spouses ***." *Id.* § 103(6). Thus, a person physically or sexually abused by a former spouse is "protected by the *** Act." See *id*. §§ 103(1), 103(6), 103(14), 201(a)(1).

¶ 47    With respect to the second requirement, subsection (c) contains a list of six circumstances when a declarant is "unavailable" and states that "[u]navailability of a witness *includes*" the listed circumstances. (Emphasis added). 725 ILCS 5/115-10.2a(c) (West 2020). The word "includes" establishes that the list that follows is not exhaustive. See *People v. Perry*, 224 Ill. 2d 312, 328 (2007) (words "includes" or "including" "when followed by a listing of items, means that the preceding general term encompasses the listed items, but the list is not exhaustive"); see also *Brunton v. Kruger*, 2015 IL 117663, ¶ 21 (legislature's use of the word "including" "indicates a legislative intent that the list *** that follows is nonexhaustive"). Although not specifically listed in subsection (c), death renders a declarant "unavailable." See *People v. Warren*, 2016 IL App (1st) 090884-C, ¶ 92 (a deceased declarant is "unavailable to testify"); *People v. Lang*, 106 Ill. App. 3d 808, 814 (1982) (the deceased declarant "was unavailable to testify at trial"). Thus, a

---

[1] Section 115-10.2a(a) also requires that the court make certain determinations about the statements being offered. See *id.* § 115-10.2a(a)(1)-(3). However, defendant does not contend that the trial court's determinations were improper with respect to Nancy's statements to Katherine, so we do not discuss those requirements here. We discuss the propriety of the trial court's determinations with respect to the statements Nancy made to Daniel in Section C.2. of this decision.

16

declarant who is dead is "unavailable" under section 15-10.2a of the Code. See *People Richter*, 2012 IL App (4th) 101025, ¶¶ 86-93 (allowing hearsay statements of murdered spouse to be admitted under section 115-10.2(a)); *People v. Cleary*, 2013 IL App (3d) 110610, ¶ 31 (defendant conceding section 115-10.2a permitted admission of statements made by deceased victim).

¶ 48    Finally, with respect to the third requirement, "domestic violence" means "abuse," which includes "physical abuse, harassment, intimidation of a dependent, interference with personal liberty or willful deprivation." 750 ILCS 60/103(1) & (3) (West 2020). Additionally, "physical abuse" includes "sexual abuse," as well as "knowing or reckless use of physical force, confinement or restraint" and "knowing or reckless conduct which creates an immediate risk of physical harm." Id. § 103(14). A prosecution for first degree murder meets the definition of a "domestic violence prosecution" if the defendant is a "family or household member" of the victim. See *Richter*, 2012 IL App (4th) 101025, ¶¶ 90-93.

¶ 49    Here, all the requirements of section 115-10a of the Code were met. First, Nancy was protected by the Act because she was physically abused by defendant, her former spouse. See 750 ILCS 60/103(1) & (6); *id*. at § 201(a)(i) (West 2020). Second, Nancy was unavailable because she was deceased. See *Warren*, 2016 IL App (1st) 090884-C, ¶ 92; *Lang*, 106 Ill. App. 3d at 814. Finally, defendant's trial for first degree murder and criminal sexual assault was "a domestic violence prosecution" because defendant was a family or household member of the victim. See 750 ILCS 60/103(1), (3) & (14) (West 2020); *Richter*, 2012 IL App (4th) 101025, ¶¶ 90-93. Thus, the trial court properly admitted Nancy's statements under section 115-10.2a of the Code.

¶ 50    2. Illinois Rule of Evidence 804

¶ 51    Nevertheless, defendant argues that the trial court erred in admitting the statements because Illinois Rule of Evidence 804 conflicts with section 115-10.2a of the Code and exclusively governs when statements of a dead declarant may be used at trial.

¶ 52    "The rule against hearsay prevents the introduction at trial of out-of-court statements offered to prove the truth of the matter asserted." *People v. Melchor*, 376 Ill. App. 3d 444, 450 (2007). "However, the rule has many exceptions." *Id*. Illinois Rule of Evidence 804 sets forth "[h]earsay [e]xceptions" when a declarant is "unavailable." Ill. R. Evid. 804 (eff. Jan. 1, 2011). The rule states that a witness is "unavailable" when she "is unable to be present or to testify at the hearing because of death or then existing physical or mental illness or infirmity[.]" *Id*. at (a)(4). The rule further states: "The following are not excluded by the hearsay rule if the declarant is unavailable as a witness: (1) *Former Testimony*. *** (2) *Statement Under Belief of Impending Death*. *** (3) *Statement Against Interest.* *** (4) *Statement of Personal or Family History*. *** (5) *Forfeiture by Wrongdoing*. ***." *Id*. at (b)(1-5).

¶ 53    We disagree with defendant's contentions that Rule 804 and Section 115-10.2a conflict and that Rule 804 supersedes Section 115-10.2a for several reasons.

¶ 54    First, the plain language of both Section 115-10.2a of the Code and Rule 804 does not support defendant's contentions. Section 115-10.2a of the Code states that it applies when a statement "is not specifically covered by any other hearsay exception ***." 725 ILCS 5/115-10.2a(a) (West 2020). Therefore, it is not necessary for a statement that fits the requirements of Section 115-10.2a of the Code to also come within one of the hearsay exceptions listed in Rule 804, as defendant contends.

¶ 55    Additionally, the language of Rule 804 establishes that it contains a non-exhaustive list of hearsay exceptions. Rule 804 lists five categories of statements that are "not excluded by the

18

hearsay rule if the declarant is unavailable as a witness." See Ill. R. Evid. 804(b) (eff. Jan. 1, 2011). Nowhere does Rule 804 state that those five types of statements are the only ones "not excluded by the hearsay rule if the declarant is unavailable as a witness." See *id*. If the drafters of Rule 804 had intended the five categories of statements listed in the rule to be the only categories of statements "not excluded by the hearsay rule if the declarant is unavailable as a witness," it would have said so. Further, such a contention is without merit as our legislature has declared other types of statements to be "hearsay exceptions" and admissible where the declarant is "unavailable." See 725 ILCS 5/115-10(b)(2)(B) (West 2020) ("hearsay exception" for statements made by child victims of sexual assault); *id*. § 115-10.3(b)(2)(B) ("hearsay exception" for "elder adults"). Thus, section 115-10.2a, which created an additional exception to the hearsay rule, does not conflict with Rule 804.

¶ 56        Additionally, the Illinois Rules of Evidence and the drafters' comments to those rules refute defendant's contention that Rule 804 preempts section 115-10.2a of the Code. Illinois Rule of Evidence 802 states: "Hearsay is not admissible except as provided by these rules, by other rules prescribed by the Supreme Court, or *by statute* as provided in Rule 101." (Emphasis added.) Ill. R. Evid. 802 (eff. Jan. 1, 2011). Illinois Rule of Evidence 101 provides: "A statutory rule of evidence is effective unless in conflict with a rule or a decision of the Illinois Supreme Court." Ill. R. Evidence 101 (eff. Jan. 1, 2011).

¶ 57        The drafters of the Illinois Rules of Evidence stated:

> "It is important to note that the Illinois Rules of Evidence are not intended to abrogate or supersede any current statutory rules of evidence. The committee sought to avoid in all instances affecting the validity of any existing statutes promulgated by the Illinois legislature." Ill. R. Evid., Committee Commentary (eff. Jan. 1, 2011).

19

Section 115-10.2a of the Code was enacted by our legislature seven years before our supreme court adopted the Illinois Rules of Evidence. See *People v. Burnett*, 2015 IL App (1st) 133610, ¶ 4 (section 115-10.2a enacted in 2003); *Deroo*, 2022 IL 126120, ¶ 39 (supreme court adopted Illinois Rules of Evidence in 2010). Thus, section 115-10.2a was an existing statutory rule of evidence when Rule 804 became effective, and Rule 804 was not intended to abrogate or supersede it. See Ill. R. Evid., Committee Commentary (eff. Jan. 1, 2011). We, therefore, reject defendant's contention that Rule 804 preempts section 115-10.2a of the Code and find, instead, that the plain language of section 115-10.2a creates an additional hearsay exception not contained in Rule 804.

¶ 58                          3. Section 115-10.4 of the Code

¶ 59       Defendant also argues that section 115-10.4 of the Code (725 ILCS 5/115-10.4 (West 2020)) supersedes section 115-10.2a of the Code because it is more specific.

¶ 60       Section 115-10.4 of the Code "provides a statutory exception to the hearsay rule, for the prior testimony of a dead man." *Melchor*, 376 Ill. App. 3d at 450. It states in pertinent part:

> "(a) A statement not specifically covered by any other hearsay exception but having equivalent circumstantial guarantees of trustworthiness is not excluded by the hearsay rule if the declarant is deceased and the court determines that:
>
>   (1) the statement is offered as evidence of a material fact; and
>
>   (2)  the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and
>
>   (3) the general purposes of this Section and the interests of justice will best be served by admission of the statement into evidence.

                                   ***

20

(c) Unavailability as a witness under this Section is limited to the situation in which the declarant is deceased.

(d) Any prior statement that is sought to be admitted under this Section must have been made by the declarant under oath at trial, hearing or other proceeding and then subject to cross-examination by the adverse party." 725 ILCS 5/115-10.4 (West 2020).

We disagree with defendant's contention that section 115-10.4 supersedes section 115-10.2a when the declarant is deceased for several reasons.

¶ 61     First, the plain language of section 115-10.4 of the Code refutes defendant's contention. Subsection (a) of section 115-10.4 of the Code provides: "A statement not specifically covered by any other hearsay exception but having equivalent circumstantial guarantees of trustworthiness is not excluded by the hearsay rule if the declarant is deceased" and the court makes certain determinations. 750 ILCS 5/115-10.4(a) (West 2020). By its very language, section 115-10.4 of the Code only applies if a statement is "not specifically covered by any other hearsay exception." *Id.* Here, Nancy's statements are covered by section 115-10.2a, so by its plain language, section 115-10.4 does not apply.

¶ 62     Moreover, we disagree with defendant's contention that section 115-10.4 of the Code supersedes section 115-10.2a of the Code because it is the more specific statute. It is well settled that when two statutes are irreconcilably in conflict, the more specific controls over the more general. See *State v. Mikusch,* 138 Ill. 2d 242, 254 (1990). However, sections 115-10.2a and 115-10.4 of the Code are not in conflict. They simply set forth two different hearsay exceptions. That the requirements for each hearsay exception are different does not create a conflict. Furthermore, we disagree that, even if a conflict existed, section 115-10.4 is the more specific statute. Section 115-10.4 of the Code governs the admissibility of statements in all types of cases when the

21

declarant is deceased. See 725 ILCS 115-10.4 (West 2020). Section 115-10.2a of the Code, on the other hand, governs the admissibility of statements in only one specific type of case: "a domestic violence prosecution." See *id.* § 115-10.2a(a). Because section 115-10.4 of the Code applies to cases generally, and section 115-10.2a applies to only one type of case, section 115-10.2a is the more specific statute. See *Hernon,* 149 Ill. 2d at 195.

¶ 63    Finally, case law establishes that section 115-10.2a applies to statements made by a declarant who is deceased at the time of trial because she was murdered by the defendant. See *Cleary*, 2013 IL App (3d) 110610, ¶¶ 30-31; *Richter*, 2012 IL App (4th) 101025, ¶¶ 90- 93.

¶ 64    For all these reasons, we reject defendant's contention that section 115-10.4 of the Code, rather than section 10.2a, is controlling and find that the trial court properly admitted Nancy's statements pursuant to section 115-10.2a of the Code. Because defendant has failed to establish that the court erred in admitting Nancy's statements under section 115-10.2a of the Code, defendant cannot establish plain error. See *Herron,* 215 Ill. 2d at 187.

¶ 65                    C. Prior Incident of Sexual Assault

¶ 66    Defendant next argues that the trial court erred in allowing Daniel to testify that Nancy said defendant "raped" her days before her death. Defendant claims that the trial court should have denied the State's motion to admit Daniel's testimony because (1) it violated his right to confrontation under the sixth amendment, (2) it was not trustworthy, as required by section 115-10.2a of the Code, and (3) defendant did not receive proper notice of it.

¶ 67    "As a general rule, a trial court's ruling on a motion *in limine* regarding the introduction or exclusion of evidence is reviewed under an abuse of discretion standard." *People v. Starks,* 2012 IL App (2d) 110273, ¶ 20. A trial court abuses its discretion only when its decision is arbitrary, fanciful, unreasonable, or no reasonable person would adopt the view taken by the court. *Id.*

22

Accordingly, absent an abuse of discretion, this court will not disturb a ruling on a motion *in limine. Id.*

¶ 68                                    1. Confrontation

¶ 69       The confrontation clause of the United States Constitution provides: "In all criminal prosecutions, the accused shall enjoy the right *** to be confronted with the witnesses against him." U.S. Const., amend. VI. The confrontation clause prevents a "testimonial" hearsay statement of a declarant from being admitted against a criminal defendant unless the declarant is unavailable to testify and the defendant had a prior opportunity to cross-examine the declarant. *Crawford v. Washington,* 541 U.S. 36, 68 (2004). Nontestimonial hearsay statements, however, are not subject to the protection of the confrontation clause. See *Davis v. Washington,* 547 U.S. 813, 821 (2006). "Accordingly, whether a hearsay statement is testimonial is often the threshold issue under confrontation clause analysis." *Cleary*, 2013 IL App (3d) 110610, ¶ 37.

¶ 70       A testimonial statement has two components. *Id*. ¶ 46. First, it must be made in a "solemn fashion" *Id*. ¶ 47. This includes statements made formally, such as under oath or to a police officer after *Miranda* warnings have been given, or where there is some threat of consequences for dishonesty, such as lying to a police officer. *Id*. ¶¶ 47, 56. Second, the statement "must be intended to establish a particular fact." *Id*. ¶ 48. "A statement is intended to establish a particular fact if the declarant is acting in a manner analogous to a witness at trial, giving information about past events that could potentially be relevant to a later criminal prosecution." *Id*. ¶ 56.

¶ 71       While a formal statement to a government officer is testimonial, a casual remark to an acquaintance is not. See *Crawford*, 541 U.S. at 51. A victim's statements to family and friends about her relationship with the defendant, including statements that the defendant threatened to kill her, are not testimonial because they are not made in a solemn fashion or made with the intent

23

that they be transmitted to law enforcement. See *Cleary,* 2013 IL App (3d) 110610, ¶¶ 57-58. Thus, the trial court does not err by admitting such statements against a defendant. See *id*. ¶ 58.

¶ 72    Here, Nancy's statements to Daniel, her boyfriend, about defendant, her ex-husband, were not testimonial because they were not made in solemn fashion in a manner analogous to testifying at trial. See *id*. ¶¶ 47, 56 Therefore, the trial court did not violate defendant's sixth amendment rights by allowing Daniel to testify about Nancy's statements. See *id. ¶* 58.

¶ 73                                2. Trustworthiness

¶ 74    A statement is admissible under section 115-10.2a of the Code if the trial court determines that it is "trustworthy, material, and probative and serves the interests of justice." *People v. Moore*, 2023 IL App (2d) 220289, ¶ 34 (citing 725 ILCS 5/115-10.2a(a) (West 2020)). A trial court's finding that a statement is admissible under section 10.2a of the Code because it meets these requirements is entitled to deference; reversal is warranted only if the court's finding is "arbitrary, fanciful, or unreasonable." See *Richter*, 2012 IL App (4th) 101025, ¶ 109.

¶ 75    A court should consider the following factors to determine whether a hearsay statement is trustworthy: "(1) whether the statement was made spontaneously to a close acquaintance shortly after the crime occurred; (2) whether the statement was corroborated by other evidence; (3) whether the statement was self-incriminating or otherwise against the declarant's interest; and (4) whether there was an adequate opportunity to cross-examine the declarant." *People v. Bueno*, 358 Ill. App. 3d 143, 160 (2005). Not all four factors need to be present for a statement to be admissible. *Id*. Instead, the court's determination should be based on the "totality of the circumstances." *Id*. Other factors a court may consider include when the statements were made in relation to the declarant's death and whether the declarant had a motive to fabricate. See *Richter*, 2012 IL App (4th) 101025, ¶ 107.

24

¶ 76       Statements made by a visibly upset declarant to a close family member shortly after a crime was committed against the declarant contain "sufficient guarantees of trustworthiness" to be admissible under section 115-10.2a of the Code. See *Moore*, 2023 IL App (2d) 220289, ¶ 35. Similarly, statements are admissible under section 115-10.2a of the Code if they are made by a deceased declarant to family members, friends or coworkers within a reasonably short time before the declarant's death and the declarant had no motive to fabricate. See *Richter*, ¶¶ 106-111.

¶ 77       Here, Nancy's statement to Daniel that defendant "raped" her was made shortly after the incident happened and within days of her death. Immediately before Nancy made the statement, Daniel noticed that Nancy appeared quiet, sad and "not her bubbly self." Additionally, like the deceased victim in *Richter*, Nancy had no reason to fabricate her statement to Daniel. Under these circumstances, the trial court's admission of the statement was not an abuse of discretion. See *id.*; *Moore*, 2023 IL App (2d) 220289, ¶ 35.

¶ 78                                          3. Notice

¶ 79       Finally, defendant contends that the State failed to give him proper notice that Daniel would testify that Nancy told him defendant "raped" her. We disagree and find the State did not violate the notice provision of section 115-10.2a(b) of the Code (725 ILCS 5/115-10.2a(b) (West 2020)), requiring the State to notify defendant prior to trial of its "intention to offer the statement, and the particulars of the statement."

¶ 80       Here, the State not only included Daniel in the list of witnesses it intended to call at trial but also provided defendant with a copy of the video of Daniel's interview with police during which Daniel made the statement in question. Under these circumstances, the State substantially complied with section 115-10.2a(b)'s notice provision. See *People v. Burnett*, 239 Ill. App. 3d 582, 587 (1993) (finding State substantially complied with section 115-10 of the Code requiring

25

proponent of statement to "give the adverse party reasonable notice of his intention to offer the statement and the particulars of the statement" where State provided names of witnesses to defendant and "the substance of their testimony was contained in the police reports").

¶ 81        Because Daniel's statement was contained in his videotaped interview with police, defendant had notice of the statement and was not surprised by Daniel's testimony at trial. See *id.* Thus, the State substantially complied with the statute, and no reversible error occurred. See *id.*

¶ 82                                        D. Jury Instruction

¶ 83        Defendant also argues that the trial court abused its discretion when it refused to instruct the jury regarding second degree murder.

¶ 84        A defendant is entitled to a jury instruction on a lesser offense if "there is *some evidence* in the record that, if believed by the jury, will reduce the crime charged to a lesser offense." (Emphasis in original.) *People v. McDonald*, 2016 IL 118882, ¶ 25. However, an instruction on a lesser offense should not be given if the evidence clearly demonstrates that the crime committed was first degree murder and there is no evidence to support a conviction of a lesser crime. *People v. McCarthy*, 132 Ill. 2d 331, 343 (1989). "[W]hen the trial court, after reviewing all the evidence, determines that there is insufficient evidence to justify the giving of a jury instruction, the proper standard of review of that decision is abuse of discretion." *McDonald*, 2016 IL 118882, ¶ 42.

¶ 85        First degree murder may be reduced to second degree murder when either of the following mitigating factors is present: (1) the offender "is acting under a sudden and intense passion resulting from serious provocation by the individual killed or another whom the offender endeavors to kill"; or (2) the offender is acting under an unreasonable belief in self-defense. 720 ILCS 5/9-2(a)(1)-(2) (West 2020). "Serious provocation is conduct sufficient to excite an intense passion in a reasonable person[.]" *Id.* § 9-2(b).

26

¶ 86    Our supreme court has recognized four categories of serious provocation: " 'substantial physical injury or assault, mutual quarrel or combat, illegal arrest, and adultery with the offender's spouse.' " *People v. Chevalier*, 131 Ill. 2d 66, 71 (1989) (quoting S.H.A., chap. 38, par. 9-2, Committee Comments). Adultery as provocation is limited to instances where three requirements are met: (1) the defendant and the victim are married, and (2) the defendant catches the victim in the act of adultery or immediately before or after its commission, and (3) the killing immediately follows the discovery of adultery. See *id*. at 72.

¶ 87    Verbal communication that adultery has occurred is insufficient. *Id.* Photographs and sexually explicit text messages depicting or describing adultery are also insufficient. See *People v. Viramontes*, 2014 IL App (1st) 130075, ¶¶ 44-45, abrogated on other grounds, *People v. McDonald*, 2016 IL 118882. It is not enough for the defendant to visually discover an affair on a cell phone. See *Viramontes*, 2014 IL App (1st) 130075, ¶¶ 44-45. "[U]nder Illinois law, the defendant's sudden fit of anger must be incited from catching his or her spouse red-handed." *Id*. ¶ 44.

¶ 88    Furthermore, adultery provocation applies only to married couples. See *Chevalier*, 131 Ill. 2d at 72; *People v. Elder*, 219 Ill. App. 3d 223, 228 (1991). If spouses are divorced at the time of the homicide, the defendant is not entitled to adultery provocation to reduce his crime from first degree murder to a lesser offense. *People v. McCarthy*, 132 Ill. 2d 331, 342 (1989) (citing *People v Strange*, 81 Ill. App. 3d 81, 88 (1980) and *People v. Wood*, 72 Ill. App. 3d 919, 923 (1979)).

¶ 89    Here, the trial court properly denied defendant's request for a second degree murder instruction because defendant could not establish two of the requirements for adultery provocation. First, defendant did not catch Nancy and another man "red-handed" in the act of having sexual intercourse but, instead, saw videos of Nancy and another man engaging in sex on his cell phone.

27

Additionally, defendant and Nancy were no longer married when defendant saw the videos. Because defendant failed to meet the requirements for adultery provocation, the trial court properly denied defendant's request for a second degree murder instruction. See *McCarthy*, 132 Ill. 2d at 342-43; *Chevalier*, 131 Ill. 2d at 72-76; *Viramontes*, 2014 IL App (1st) 130075, ¶¶ 44-45; *Strange*, 81 Ill. App. 3d at 88; *Wood*, 72 Ill. App. 3d at 923-24.

¶ 90                                        E. Ineffective Assistance of Counsel Claim

¶ 91         Finally, defendant argues that he was denied effective assistance when his counsel failed to object to the jury being given a single general verdict form for first degree murder.

¶ 92         To establish ineffective assistance of counsel, a defendant must demonstrate both a deficiency in counsel's performance and prejudice resulting from the deficiency. *Strickland v. Washington,* 466 U.S. 668, 687 (1984). To demonstrate performance deficiency, a defendant must establish that counsel's performance was below an objective standard of reasonableness. *Id*. at 687-88. Prejudice is demonstrated if there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *Id.* at 694.

¶ 93         Defense counsel's failure to object to the jury receiving a single general verdict form for first degree murder does not support a claim of ineffective assistance of counsel. See *People v. Wilson*, 2017 IL App (1st) 143183, ¶ 50 (citing *People v. Calhoun*, 404 Ill. App. 3d 362, 383-84 (2010)), *People v. Mabry*, 398 Ill. App. 3d 745, 756 (2010), and *People v. Braboy*, 393 Ill. App. 3d 100, 108 (2009)). Counsel's decision not to request separate verdict forms for all the theories of first degree murder for which the defendant is charged is reasonable because "the law did not and does not place a mandatory burden on counsel to request separate verdict forms." *Braboy*, 393 Ill. App. 3d at 108.

28

¶ 94   Here, defense counsel's failure to request separate verdict forms did not amount to ineffective assistance. See *Wilson*, 2017 IL App (1st) 143183, ¶ 50; *Calhoun*, 404 Ill. App. 3d at 383-84; *Mabry*, 398 Ill. App. 3d at 756; *Braboy*, 393 Ill. App. 3d at 108. Even though defense counsel claims their failure to request separate verdict forms was inadvertent and not a matter of trial strategy, counsel's actions do not fall below an objective standard of reasonableness. See *Braboy*, 393 Ill. App. 3d at 108. Thus, defense counsel's performance was not deficient, and defendant's claim of ineffective assistance of counsel fails. See *Strickland,* 466 U.S. at 687-88.

¶ 95                                  III. CONCLUSION

¶ 96   The judgment of the circuit court of Du Page County is affirmed.

¶ 97   Affirmed.